THORNBURG, Appellant, v. SCHOOL DISTRICT NO. 3.

Division One, May 27, 1903.

1. **School Bonds:** PURCHASE BEFORE MATURITY. A school district at the suit of the purchaser of school bonds for value, without notice, before maturity, is not estopped by recitals in the bonds to deny that the requirements of the law were complied with in their issuance.

2. **School Districts:** LIMITED POWERS: NOTICE. School districts in this State are limited in their powers, having only such as are conferred by law, and any one dealing with such corporation is charged with a knowledge of its limited authority.

3. ———: ———: MATTERS OF RECORD: TRUSTING TO RECITALS IN BONDS. If facts necessary to the validity of school bonds are required by law to be made matters of record, the purchaser of

those bonds, for value, without notice, before maturity, can not claim to have been misled to his disadvantage by trusting to false recitals in the bonds, if he has neglected to examine the public records of the board which would have shown those recitals were untrue. If the records of the board do not show that a valid election was held authorizing the bonds, they are invalid, whatever may be their recitals.

4. Bonds: RECITALS: STATUTORY AND CONSTITUTIONAL REQUIREMENTS. A false recital in a bond can no more destroy the force of a positive requirement of a statute than it can that of a similar requirement of the Constitution.

5. School Bonds: EXCESSIVE ISSUE: BURDEN ON HOLDER. The burden is on the holder of school bonds who sues the district to compel it to pay them, to show that the bond issue was authorized by two-thirds of the voters of the district, and that it did not exceed five per cent of the value of the taxable property of the district.

6. ——: ISSUANCE: ACTION OF BOARD. A school board must keep a record of all its actions connected with the issuance of bonds to build a schoolhouse, and primarily what it did in the matter must be ascertained from its record.

7. ——: ELECTION: FIXING TIME. The clerk of a school board has no authority to fix the time for holding an election. The board only can do that. And if it orders an election to be held without fixing a date, he has no authority to supply the omission by the notices.

8. ——: ——: RECORD: SUFFICIENCY. The only record recital prior to issuing bonds were these: on August 2: "Ordered that notices be posted calling meeting of voters for the purpose of changing site, selling old house, making appropriation of $3,789 or one per cent on assessed valuation, leaving proceeds arising from sale of present house for seating new house;" and on August 28th: "The qualified voters . . . assembled pursuant to call after due notice of twenty days. Organized by electing W. A. Bennett and J. P. Moore as judges and John Gould as clerk. Submitted and considered propriety of the loan as per notice. Proceeded to ballot with following result: for the loan, 17; against, 2." Held, that these record entries fall short of showing any authority in the board to issue, in the name of the district, bonds to the amount of $3,500, and, hence, such bonds are not valid.

9. ——: ——: INVALID IN TOTO. An issue of bonds in excess of five per cent of the assessed valuation of the taxable property is wholly invalid. They can not be scaled down to the lawful amount, and the rest held valid.

10. ——: USE OF MONEY. A school district will not be compelled to pay bonds issued without authority of law on the ground that it

sold them, got the money, and used it to pay for a schoolhouse, which it is still using. A suit on the bonds is an action at law, and the issue is their validity.

11. ————: AMOUNT OF ISSUE. *Held*, by VALLIANT, J., with whom the other judges do not concur, that, in determining the amount of bonds a school district could issue in 1883, under the five-per-cent clause of the Constitution, the value of merchants' stocks and of the railroad property in the district is not to be counted as a part of its taxable property, since those properties are not taxable for the purpose of paying the bonds.

Appeal from Chariton Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*T. J. Skinker* for appellant.

(1)    The plaintiff is a bona fide holder of the bonds. The school board was the body whose duty it was, under the law, to ascertain and determine, before issuing the bonds, whether or not proper notice had been given of the election. It did determine this question and announced its determination by a suitable recital embodied in the bonds. The officers of the school meeting had already embodied a like recital in the record of the meeting, which is required by law to be kept. In favor of the plaintiff these recitals are conclusive, and preclude the district from showing that the notices posted called for an election to be held on a day different from that on which the election was held. Laws 1881, pp. 200, 201; Town of Coloma v. Eaves, 92 U. S. 484; Commissioners v. Nichols, 14 Ohio St. 260; Commissioners v. Bolles, 94 U. S. 104; County of Warren v. Marcy, 97 U. S. 96; 1 Dillon, Mun. Corp. (4 Ed.), sec. 549; Catron v. Lafayette County, 106 Mo. 670; Steins v. Franklin County, 48 Mo. 167; Knox County v. Aspinwall, 21 How. 531; Lexington v. Butler, 14 Wall. 282; Flagg v. Palmyra, 33 Mo. 440; State v. Saline County Court, 48 Mo. 390; Carpenter v. Town of Lathrop, 51 Mo. 483; Walnut

v. Wade, 103 M. S. 683; Cumberland County v. Randolph, 89 Va. 614; State v. Board of Education, 27 Ohio St. 96; State v. Commissioners, 37 Ohio St. 526; Madison County v. Brown, 67 Miss. 684; Vicksburg v. Lombard, 51 Miss. 127; Cutler v. Madison County, 56 Miss. 123; Madison County v. Paxton, 57 Miss. 701; Society for Savings v. New London, 29 Conn. 192; Belo v. Forsythe County, 76 N. C. 489; Clapp v. Cedar County, 5 Iowa 54; Nolan County v. State, 83 Tex. 182; San Antonio v. Lane, 32 Tex. 405; Anderson County v. Railroad, 52 Tex. 228; Lane v. Town of Embden, 76 Me. 354; Jefferson County v. Lewis, 20 Fla. 980; Seymour v. Tacoma, 6 Wash. 427; Black v. Cohen, 52 Ga. 621; Coler v. County Commissioners, 6 N. Mex. 88; Nelson v. Haywood County, 87 Tenn. 781.   (2)   For like reason the district is estopped to deny that, on the 30th of August, the school board entered an order for obtaining the loan. Heard v. School District, 45 Mo. App. 660; Mix v. The People, 72 Ill. 241; Gibbs v. School Dist., 88 Mich. 334. (3)   In determining the amount of bonds that could be issued by this district, the court should have taken into account the railroad property of the district.   R. S. 1899, p. 106; Bank v. Lyon County, 90 Fed. 523.   (4) Merchants' stocks of goods should also have been taken into account in determining the debt-incurring capacity of the district.   Const., art. 10, sec. 12; R. S. 1879, secs. 6318, 6319, 6315, 6316, 6314, 6685; "Assessment" Webster's Dictionary; Black's Law Dic.; The Century Dic.; Cooley on Taxation (1 Ed.), 258, 261; R. S. 1899, sec. 8546; Railroad v. Shacklett, 30 Mo. 559; State v. Railroad, 37 Mo. 265; State v. Railroad, 60 Mo. 149; Bailey v. Magwire, 22 Wall. 229; 2 Wag. Stat., chap. 95; R. S. 1879, secs. 6870, 6871, 6872, 6818; State ex rel. v. Railroad, 116 Mo. 15; 2 Wag. Stat., p. 1167, secs. 47, 49; p. 1168, sec. 54; p. 1170, sec. 61; p. 1160, sec. 10; 1161, sec. 14; 1162, secs. 17, 19; 1193, sec. 166; 938, sec. 6; 1 Wag. Stat., p. 442, sec. 17; State v. Tracy, 94 Mo. 225; Kansas City v. Johnson, 78 Mo. 661; Cape Gi-

rardeau v. Riley, 72 Mo. 220. (5) Even if the court should conclude that some of the foregoing items are not to be counted, still the bonds should not be held wholly void; they should be scaled proportionately and held valid to the extent that the district could lawfully incur debt. McPherson v. Foster, 43 Iowa 72; Bank v. Terrell, 78 Tex. 450; Gillim v. Daviess County (Ky.), 14 S. W. 838; Daviess County v. Dickinson, 117 U. S. 657; Daviess County Court v. Howard, 13 Bush. 101; School Town of Winamac v. Hess, 151 Ind. 229; Aubrey v. Donaldsonville, 33 La. Ann. 390; Ins. Co. v. Lyon County, 95 Fed. 330; Stockdale v. School District, 47 Mich. 227; Vaughan v. School District, 27 Or. 57; Seymour v. Tacoma, 6 Wash. 427; Waterworks Co. v. Carterville, 153 Mo. 128; City of Dawson v. Waterworks Co., 106 Ga. 735; Culbertson v. City of Fulton, 127 Ill. 30; Shirk v. Pulaski County, 4 Dillon 209; Quincy v. Warfield, 25 Ill. 317; Thompson v. School District, 102 Iowa 94; Parkinson v. City of Parker, 85 Pa. St. 313; Lewis v. City of Clarendon, 5 Dillon 329; State v. Allen, 43 Ill. 456; Mix v. The People, 72 Ill. 241; Allen, Treasurer, v. Railroad, 44 Ill. 85; Peltz v. Eichele, 62 Mo. 171; Carroll v. Campbell, 108 Mo. 550; Johnson v. Duer, 115 Mo. 366.

*A. W. Mullins* for respondent.

(1) The evidence showed and the court found that the election, recited in the bonds sued on, was not held in pursuance of any notice given therefor; the notice was that the election would be held on the 29th day of August, 1883 (without naming the place of holding the election) but the school record in evidence shows and the bonds recite that the election was held on the 28th day of August, 1883. The authority to incur the indebtedness and make and issue the bonds could be conferred only by a vote of the electors of the district at

an election duly called and twenty days' notice given
by the clerk of the school board posting bills stating
the time of holding such election.   Const., art. 10, sec.
12; Laws 1881, pp. 199, 200, secs. 2 and 3.   (2)   Stocks
of goods and merchandise in the school district are not
to be included in ascertaining the aggregate taxable
value of the property therein.   State ex rel. v. Railroad,
116 Mo. 15; Prickett v. City of Marceline, 65 Fed. 474.
(3)   Railroad property was not taxable for the pur-
pose of building or paying for the building of school-
houses, at the time of creating or attempting to create
the indebtedness in question, and was not taxable for
that purpose until the year 1885.   Laws 1885, pp. 229,
230; State ex rel. v. Railroad, 83 Mo. 395.   (4)   By
"the assessment next before the last assessment for
State and county purposes," as used in section 12 of
article 10, of the Constitution, is meant the assessment
next before the last completed assessment, and does not
refer to the last completed assessment, although another
assessment may have been begun and in process of
being made.   Sec. 12, art. 10, Const.; Prickett v. City
of Marceline, 65 Fed. 469; State ex rel. v. Railroad, 116
Mo. 24; Culbertson v. City of Fulton, 127 Ill. 30.   (5)
School bonds, issued in excess of the constitutional limi-
tation imposed by section 12 of article 10 of the Consti-
tution, are void; and the school district is not estopped
from pleading such constitutional limitation by any re-
citals contained in such bonds; or by the certificate of
registration indorsed on such bonds by the State Audi-
tor; or by both such recitals and such certificate.   Sec.
4306, 1879; sec. 847, 1889; sec. 5167, 1899; Carpenter
v. Town of Lathrop, 51 Mo. 483; Heard v. School Dis-
trict, 45 Mo. App. 660; Sturgeon v. Hampton, 88 Mo.
203; Hedges v. Dixon County, 150 U. S. 182; Dixon
County v. Field, 111 U. S. 83; Sutliff v. Lake County
Commissioners, 147 U. S. 230; Lake County v. Graham,
130 U. S. 674; Litchfield v. Ballou, 114 U. S. 190.

VALLIANT, J.—This is a suit upon nine bonds and coupons issued by the defendant, a school district in Chariton county. The bonds bear date December 1, 1883, and are part of an issue of fourteen bonds, aggregating $3,500, which was made to raise money to build a schoolhouse in the district.

The answer admits that the bonds were issued by the persons at the time holding the position of directors for the school district, but avers that they acted without authority and in violation of law, for the reasons that no election was held as required by law, no notice of such election was given, no order was made by the board of directors or entered on the record of the board authorizing the issue of the bonds or providing for the borrowing of money to build a schoolhouse; that the aggregate amount of the bonds issued exceeded five per centum of the value of the taxable property in the district as shown by the assessment next before the last assessment for state and county purposes, and that for those reasons the bonds were invalid. The reply traversed the affirmative statements in the answer and averred that the bonds were sold by the district for $3,500, that the district received the money and with it built a school house which has been used as such since 1883 and is still so used by the district.

Upon the trial the plaintiff introduced in evidence the nine bonds and the coupons sued on; the following is a copy of one of the bonds; all the rest are like it:

"Know all men by these presents: That in pursuance of section No. 2, of an act approved March 21, 1881, amendatory of section No. 7032 of article 1, chapter 150, of the Revised Statutes of Missouri, 1879, and by virtue of an election held at the schoolhouse on August 28, 1883, in district No. 3, township 56, range 21, Chariton county, Missouri, whether a loan of $3,500 should be made for the erection of a schoolhouse in said district, which proposition was submitted to the legal voters thereof on said day, after twenty days' notice

of said election had been given, as provided by law; and whereas, at said election, seventeen ballots were cast and canvassed in favor of the loan, and two ballots were cast and canvassed against the loan; now, therefore, in compliance with an order made and entered on the record by the board of school directors of said district on the 30th day of August, 1883, the said district No. 3, township 56, range 21, of Chariton county, Missouri, acknowledges itself indebted, and for value received, promises, fifteen years after date, to pay the bearer two hundred and fifty dollars, with interest thereon at eight per cent, payable annually at the Chariton County Exchange Bank in Brunswick, Missouri, upon the presentation of the proper coupons hereto attached, at said bank. This bond is payable at any time after the expiration of two years, at the option of said district, and after maturity bears ten per cent interest. In testimony whereof, the said school district has executed this bond at a session of the board of directors thereof, by the said board signing their names hereto as directors of said district; and by the signing of the name of said district by said board and clerk. (Signed) District 3, Township 56, Range 21. By F. R. Stanley, S. P. Dillon, H. Suits, directors. Attest: Hiram Suits, clerk. December 10th, 1883.''

The plaintiff's evidence tended further to prove that he purchased the bonds and coupons before their maturity, paying for the same a premium over their face value; that in doing so he relied on the recitals on the face of the bonds, the certificate of registration by the State Auditor indorsed thereon, and the assurance by the person from whom he bought them that all the matured interest to date had been paid; that he made no examination of records to ascertain if the recitals contained in the bonds and in the certificate of registration were true.

A witness for plaintiff testified that he was one of the clerks of the election at which it is claimed the bonds

were authorized by the vote of the people; that the election was held in the district on August 28, 1883; that he saw several written notices posted in different places in the district and the election was held pursuant to the notices; after that at the request of the directors witness procured the printing of the bonds and witnessed their execution by the directors.   Another witness for plaintiff testified that his firm built the schoolhouse in 1883-4, they were employed by the directors to do so and were paid out of money deposited in bank for that purpose; that there were about 150 voters in the school district.

Plaintiff's record evidence was as follows:

Proceedings of the meeting of the school board, August 2, 1883, showing that plans for a schoolhouse were submitted and adopted: "Ordered that notices be posted calling meeting of voters for the purpose of changing site, selling old house, making appropriation of $3,789, or one per cent on assessed valuation, leaving proceeds arising from sale of present house for seating new house."

Proceedings of special meeting, August 28, 1883: "The qualified voters of district No. 3, township 56, range 21, assembled pursuant to call after due notice of twenty days.   Organized by appointing W. A. Bennett and J. P. Moore as judges, and John Gould as clerk.   Submitted and considered propriety of the loan as per notice.   Proceeded to ballot with the following results: for the loan 17; against 2."

Proceedings of meeting, November 7th, 1883, related to the purchase of a lot, "all to be paid for out of the proceeds arising from the appropriation for erecting house and purchasing site."

Certain entries in the record book showing the issuance, February 5, 1885, of a warrant for $282.35 to pay interest on bonds; a payment of $98, as balance of bond No. 1; a payment of $526.96, January 23, 1887, on bond and interest, and a memorandum indicating a loan

from the Exchange Bank at Brunswick on bonds amounting to $3,500.

Defendant introduced in evidence the proceedings of the meeting of the school board July 7, 1883, at which it was: ''Ordered that special notice of meeting be posted according to law; calling the voters together for the purpose of erecting new schoolhouse, selling old site, purchasing new site.'' Then of the meeting of July 28th: ''Voters of district No. 3, township 56, range 21, met pursuant to call, notice having been posted according to law. Submitted a proposition to sell old schoolhouse and site; carried. Submitted proposition to erect new schoolhouse; carried.''

A paper purporting to be a notice of an election to be held on August 29, 1883, on the proposition to negotiate a loan of $3,500 to build a schoolhouse, in the handwriting of the clerk of the school board and found fastened in the book in which the proceedings of the board were recorded, was read in evidence over the objection of the plaintiff.

Defendant's testimony tended to show that the value of the taxable property in the district as shown by the assessment for 1881, was $56,200, which included railroad property to the value of $25,589. The assessment for 1882 showed taxable property to the value of $74,889, of which $27,292 was the value of railroad property and $9,180 merchants' stocks. The assessment for 1883 was $86,243, of which $32,424 was railroad property, and $13,243 merchants' stocks.

The plaintiff asked instructions on the theory that if he purchased the bonds before maturity without knowledge or information of any irregularity or illegality in their issue, he had a right to assume that they were issued in compliance with law and was not bound to examine the records of the school board to ascertain if the law had been complied with; that defendant could not defeat the suit by showing that the election was held on a different day from that specified in the notice of

election, or by showing that there was no order of the board or record directing the issuance of the bonds; also that if plaintiff was the purchaser before maturity without notice as above mentioned and if the men who signed the bonds were directors of the school district and the bonds were issued for the purpose of building a schoolhouse, the finding should be for the plaintiff for the full amount of the bonds and coupons, unless the issue was in excess of five per cent of the taxable value of the property in the district as shown by the assessment for 1882, including railroad property and merchants' stocks, in which event the recovery should be scaled down by appropriating the excess among the fourteen bonds issued and plaintiff was entitled to recover on his nine bonds and coupons after the amount thereof should be so scaled down. The court refused those instructions.

Defendant asked instructions to the effect that if the election was held on the 28th while the notice called for an election on the 29th of August no authority was conferred thereby on the board to issue the bonds; that if $3,500, the amount of the whole issue, was in excess of five per cent of the value of the taxable property in the district as shown by the assessment next before the last assessment for State and county purposes previous to the incurring of the indebtedness, then the bonds were invalid and plaintiff could not recover, and that in making the estimate neither railroad property nor merchants' stocks was to be included.

The court gave those instructions and gave also a peremptory instruction to the effect that the plaintiff under the evidence was not entitled to recover. To the ruling of the court in refusing and giving instructions plaintiff duly excepted. There was a finding and judgment for the defendant, from which plaintiff has prosecuted this appeal.

## I.

Appellant's chief reliance is upon his proposition that since he is a purchaser for value, without notice, before maturity, the defendant is estopped by the recitals in the bonds to deny that the requirements of the law were complied with in their issuance.

Appellant is not without authorities in other jurisdictions to support his proposition, but that is not the law of this State. In Missouri all corporations of this kind are limited in their powers, having only such as are conferred by law, and any one dealing with such corporation is charged with knowledge of its limited authority.

In case the existence of facts necessary to the validity of an act of such corporation is required by law to be made a matter of public record, one can not claim to have been misled to his disadvantage, by trusting to false recitals, if he has neglected to examine the public records which would have shown him the truth. What is here said is in reference to essential facts, not mere irregularities in procedure.

In Carpenter v. Lathrop, 51 Mo. 483, this subject was discussed at length and the previous decisions of this court on the point were reviewed by VORIES, J., who delivered the opinion of the court and thus stated the conclusion: "I think in all cases where the bond or other instrument purports to have been issued by delegated power, . . . it devolves on the plaintiff to show that the power has been conferred before he can recover. . . . The plaintiff seems to have relied upon the recitals made in the bonds, and also upon the record of the order for the printing of the bonds made by the trustees of the town. I have already stated that I do not think that these recitals are sufficient evidence to bind the defendant or to show that the power existed in the trustees to execute the bonds."

In Catron v. Lafayette Co., 106 Mo. 659, l. c. 667, the court per BRACE, J., referring to the holder of such a bond, said: "He must at his peril ascertain that the county court has power to issue the security for such purposes, and then he has the right to trust to the decision of the proper authorities when the bonds were issued, as to the regularity of the proceedings." That is as far as this court has ever authorized one to trust the recitals in bonds of this character.

In Heard v. School District, 45 Mo. App. 660, our Kansas City Court of Appeals, per SMITH, P. J., after reviewing the decisions of this court, said: "It is thus seen that the rule which now obtains in this State is, that the recitals in a bond of the class to which that sued on belongs are neither prima facie, nor conclusive, evidence of the required authority to issue the same. These recitals in the bond, of themselves, prove nothing. The bond, it seems, would be just as valid without them. They do not dispense with the necessity of proving what they recite when an action is brought on the bond." That is a correct conclusion from the adjudications in this State. What the law requires to be done in order to confer authority on the board of directors for the school district to issue bonds, must in order to make out the plaintiff's case, be shown to have been done by evidence other than recitals on the face of the bonds, and if the law requires a record of the facts to be kept, the record is the best evidence of the facts and, primarily, none other is admissible.

The Supreme Court of the United States draws a distinction which we do not draw, between requirements prescribed by statute and those prescribed by the Constitution. In Hedges v. Dixon County, 150 U. S. 182, the court, per Mr. Justice JACKSON, at p. 187, said: "Again, the Constitution of the State having prescribed the amount which the county might donate to a railroad company, that provision operated as an absolute limitation upon the power of the county to exceed that

amount, and it is well settled that no recitals in the bonds, or indorsed thereon, could estop the county from setting up their invalidity, based upon a want of constitutional authority to issue the same. Recitals in bonds issued under legislative authority may estop the municipality from disputing their authority as against a bona fide holder for value, but when the municipal bonds are issued in violation of a constitutional provision, no such estoppel can arise by reason of any recitals contained in the bonds." Therefore, even under the decisions of the Supreme Court of the United States, to which we are referred by appellant, the recitals in these bonds are not evidence, because the limitation on the power of the board of directors to issue them is placed by the Constitution of the State. In our judgment, a false recital in a bond can no more destroy the force of a positive requirement of a public statute than it can of a requirement of the Constitution.

The court did not err in refusing the instructions asked by plaintiff based on his theory as to the effect of the recitals in the bond.

## II.

Section 12, article 10, of our Constitution, ordains: "No county, city, town, township, school district or other political corporation or subdivision of the State, shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and

county purposes, previous to the incurring of such indebtedness.''

Under this clause of the Constitution the board of directors had no authority to incur indebtedness to any amount exceeding the revenue for the year without the assent of two-thirds of the voters in the district, and even with such assent the board was forbidden to incur indebtedness to exceed in amount five per cent of the value of the taxable property in the district. The burden was therefore on the plaintiff to show that this bond issue was authorized by two-thirds of the voters and that it did not exceed five per cent of the value of the taxable property in the district.

The Constitution did not declare how the will of the voters in the district was to be expressed; that matter was therefore left to the General Assembly to direct by statute. Section 7032, Revised Statutes 1879, amended by the Act of 1881, which was the law when these bonds were issued, conferred on the school board, within the constitutional limit, authority to borrow money to build schoolhouses, and directed how the will of the voters in the district on that subject should be expressed. The statute directed that an election should be held at an annual or special meeting for that purpose after fifteen days' notice had been given by written or printed notices posted in the district; that the voting should be by ballot, and that the authority to make the loan should be conferred if two-thirds of the voters so expressed.

The authority to borrow the money and issue the bonds was devolved on the board of directors, but before they could exercise the authority they would have to order an election to ascertain the will of the voters. The board of directors was the organization through which the whole machinery of the law was to operate. The board was required by law to keep a record of its proceedings. [Sec. 7042, R. S. 1879.] That was a public record and to it we must, primarily, look to ascer-

tain what action the board of school directors took in this matter.

Referring first to the parts of the record introduced in evidence by the defendant, because they are prior in date to those introduced by plaintiff, we see that at the board meeting of July 7th, a special meeting of the voters of the district was called and that in accordance therewith a meeting was held on July 28th, at which a proposition to sell the old schoolhouse and site and build a new schoolhouse was submitted and carried. But these bonds do not purport to have been issued pursuant to authority derived from that meeting or that election, if there was an election then. Those were the proceedings doubtless to which one of plaintiff's witnesses, Mr. Kinley, referred, when he said that he advised his client not to invest in the bonds because the vote was not taken in the manner prescribed by the statute. The bonds in suit purport to have been issued under proceedings instituted subsequent to those above referred to and evidenced by the parts of the record introduced in evidence by the plaintiff as of dates August 2d and August 28th.

Now let us see if there is anything in the proceedings of the board under those dates to constitute a foundation for the action of the directors in issuing the bonds. The only thing in the record of August 2d, bearing on the subject is: "Ordered that notices be posted calling meeting of voters for the purpose of changing site, selling old house, making appropriation of $3,798 or one per cent on assessed valuation, leaving proceeds arising from sale of present house for seating new house." That is all there is in this record to support the claim that this board ordered a meeting of the voters to be held on August 28th to consider the proposition to authorize the board to borrow $3,500 to build a schoolhouse and issue bonds to secure the payment thereof. The order of the board does not name a date on which the meeting of the voters is to be held, and it makes no reference to borrowing money. It refers to making an appropriation, but for what purpose

is not stated. The statute imposes on the clerk the manual labor of signing and posting the notices, but it does not clothe him with authority to order a meeting of the voters or to designate the day on which an election shall be held. The board alone had authority to do that, but in this instance omitted to do it.

The record of August 28th says that the qualified voters "assembled pursuant to call after due notice of twenty days. Organized by appointing W. A. Bennett and J. P. Moore as judges and John Gould as clerk. Submitted and considered propriety of the loan as per notice. Proceeded to ballot with the following results; for the loan, 17; against, 2."

Plaintiff draws the conclusion from that record that a notice was posted calling a meeting on that day and specifying that the meeting was for the purpose of considering the subject of a loan. But if such notice was given it was not in pursuance of any order of the board of directors. Besides, whilst the record of August 28th says that the "propriety of the loan as per notice" was considered, it does not say what loan the notice designated, therefore we can not from the record learn what loan was considered.

Those are the only record entries of the board's proceedings bearing on the subject prior to the issuance of the bonds, and they fall short of showing any authority in the directors to make the issue.

### III.

The Constitution, as we have seen, expressly forbids the board of directors to incur indebtedness in excess of five per cent of the value of the taxable property in the district, "to be ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of such indebtedness."

The learned counsel in this case are not agreed as to which assessment we must refer to for the purpose of determining whether this indebtedness exceeded the limit prescribed by the Constitution. Counsel for ap-

pellant are of the opinion that it is the assessment of 1882, while counsel for respondent think it is that of 1881.

If we should concede to appellant that the assessment of 1882 is the standard, it would still leave the bond issue in excess of the prescribed limit.

According to the assessment of 1882 the value of the taxable property in the school district was $74,839, but' included in that estimate is the sum of $27,292 as the value of railroad property, and $9,180 as the value of merchants' stocks. If we deduct either of those items it will leave the assessment less than $70,000, and therefore $3,500 would be in excess of the five per cent limit.

It has been decided by this court that, at the date these bonds were issued, railroad property was not taxable for the purpose of raising money with which to pay for a schoolhouse (State ex rel. v. Railroad, 83 Mo. 395), and counsel for appellant concede that to be the law. But the learned counsel argue that whilst railroad property was not taxable for this purpose it was nevertheless to be taken into account in estimating the extent to which the board might go in incurring indebtedness for this purpose, because by the terms of the Constitution the assessment named as the basis of the calculation is "the assessment next before the last assessment for State and county purposes."

The clause of the Constitution under discussion is not aimed at school districts alone, but its language is: "No county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted," etc.

No distinction is made between any of these political corporations named in respect of the subject; the same ratio between the value of the taxable property and the tax to be levied is prescribed for all alike in one group. If we should give to the words "assessment for State and county purposes" in this clause the meaning that appellant's counsel think they should have, then we should have a school district empowered to become indebted to a greater degree than five per cent of

the property liable to be taxed for its payment, while a county, city, town or township had no such power.

The plain purpose of the Constitution is to forbid the incurring of a public debt beyond a certain per centum of the value of the property taxable for its payment. That purpose must not be lost sight of in interpreting any doubtful words in the clause. The language is not that the corporation shall not incur indebtedness exceeding five per centum on the value of property within its territorial limits subject to taxation for state and county purposes, but it is that it shall not incur such indebtedness "exceeding five per centum on the value of the taxable property therein." Then it specifies the source from which information as to that value is to be obtained, that is, the official assessment for state and county purposes. If the clause under discussion had simply forbidden the school district to incur indebtedness "exceeding five per centum on the value of the taxable property therein," without further demonstration, it would have left open the question of how that value was to be ascertained and in that event the board of directors could have ordered an assessment for that purpose. But the lawmakers were unwilling to leave it in that condition and therefore they pointed out the standard by which the valuation was to be ascertained, to-wit, the official assessment for state and county taxation. The words "for state and county purposes" in that clause are merely descriptive of the official document to which reference is made.

At the date of the issuance of the bonds in question the case of State ex rel. v. Railroad, above cited, had not been decided, and the school directors doubtless assumed that railroad property in the district was taxable for the purpose of paying the bonds and they acted on that assumption, but it was a mistake, and that mistake was fatal to the bonds.

It has also been decided that the value of merchants' stocks was not to be taken into account in esti-

mating the taxable value of property in the county. [State ex rel. v. Railroad, 116 Mo. 15.]   Yet merchants' stocks were included in the estimate on which the directors relied when they issued those bonds.   Deducting, as we must, from $74,889 (the assessment of 1882), the railroad property, $27,292, and the merchants' stocks, $9,180, only the sum of $38,417 remains as the basis on which the board of directors, if they had been so authorized by the assent of the voters, could have predicated a bond issue, five per cent on which basis would have been $1,920.85.   For this reason, even if the assent of the voters had been obtained, the issue of bonds to the amount of $3,500 was in violation of the clause of the Constitution above quoted, and the bonds were invalid.

## IV.

It is contended, however, that in case the amount of the bonds is found to be in excess of the constitutional limit, the court should scale them down to the amount that was lawful and give plaintiff judgment for his proportion of the reduced amount.   That course would be equivalent to the making of a new contract for the parties, not only a contract which the parties themselves did not make, but one which we have no means of knowing they would have made.   The voters of the district who were to be first consulted might be very willing to build a new school house of a style to cost $3,500 but unwilling to build one of a style to cost only $1,900. We can gather from the meager record of the school board in evidence that the proposition involved the selling of an old schoolhouse and the building of a new one.   How can we assume in such case that the voters would not have preferred to keep the old schoolhouse in preference to building such a new one as $1,900 would pay for?   But we need not conjecture on such a subject; the school directors essayed to make a contract that they were expressly forbidden by the Constitution to make, and it is therefore wholly invalid.

The argument is made that the school district got the money for these bonds and used it in the construction of a schoolhouse which it has ever since used and still possesses and enjoys.

If this were a suit in equity to subject the property to the payment of the money furnished to purchase it, that argument would be in place; but this is an action at law, and the plaintiff must stand or fall on the question of the validity of the contract.

There are some other questions discussed in the briefs, but they become unimportant in view of the conclusion we have reached on the points above considered.

The trial court on the main questions took the correct view of the case and the judgment is affirmed. *Brace, P. J.,* and *Marshall, J.,* concur in paragraph I, II and IV, and in the result, but dissent from paragraph III; *Robinson, J.,* absent.