STATE OF MISSOURI at the relation of CHARLES YOUNG, Treasurer and and Ex Officio Collector of Livingston County, Appellant, v. F. W. WOOLWORTH COMPANY.—159 S. W. (2d) 297.

Division One, December 12, 1941.

Rehearing Denied, February 26, 1942.

*Joseph J. Shy* for appellant.

*Clarence T. Case, David W. Voyles, T. Jackson Case, Arch B. Davis* and *James W. Davis* for respondent.

1182

HYDE, C.—This is an action in six counts, each on the bond (for years 1923 to 1928 inclusive) required for merchant's license tax under Section 11306, R. S. 1939 (Sec. 10078, Mo. Stat. Ann. 8063, amended Laws 1935, p. 407) in the form provided by Section 11308, R. S. 1939. (Section 10080, Mo. Stat. Ann. 8064, amended Laws 1935, p. 407.) Recovery is sought for four times the amount of revenue found to be due for State and county taxes for each of these years, because it is alleged that false statements were filed, under the

provisions of Section 11317, R. S. 1939. [Section 10089, Mo. Stat. Ann. 8069.] The court sustained defendant's demurrer to plaintiff's petition and entered judgment of dismissal from which plaintiff has appealed.

The question presented, by the allegations of the petition and the demurrer, is: Does the final determination of the Board of Equalization of the assessment of the merchant's tax (in accordance with the value stated in the merchant's list), and the payment of the taxes based thereon, make the matter of valuation *res judicata*, so that it is not subject to be collaterally attacked several years later in a suit by the collector on the merchant's bond?

The statutes requiring bond for merchant's license tax, prescribing form of bond, and providing double, treble and quadruple penalties, as well as provisions for suit to collect them, first appear in R. S. 1855, Chap. 110, pp. 1072-78. [See also Laws 1853, p. 111.] They have been retained to this time in almost identical language (R. S. 1855, Chap. 110, sec. 4, now 11306, R. S. 1939; sec. 5, now 11308, R. S. 1939; sec. 11, now 11315, R. S. 1939; sec. 12, now 11316, R. S. 1939; sec. 13, now 11317, R. S. 1939; sec. 14, now 11318, R. S. 1939; sec. 15, now sec. 11319, R. S. 1939.) Under the 1855 laws, the merchant's tax (*ad valorem*) was "upon all goods, wares and merchandise, purchased by them," with certain exceptions (sec. 3), "within the year" (sec. 6); while the tax is now "on the highest amount of all goods, wares and merchandise which they may have in their possession or under their control . . . between the first Monday in March and the first Monday in June." [Section 11305, R. S. 1939; sec. 13067, R. S. 1919, same as now.]

However, from 1855 (sec. 6, chap. 110, R. S. 1855) up to 1895 (sec. 6899, R. S. 1889), the statement showing such amounts of goods, upon which the tax was computed, was filed with the county clerk, and valuation therein stated was the only basis for computing the license tax. The clerk was later given the duty of making a "merchant's tax book" showing the amount of each statement and the taxes due thereon, and delivering the book to the collector for collection of these taxes. [Laws 1877, p. 294.] Under this original license tax system, it was held that merchant's goods were not part of the assessed taxable property of a county and could not be considered in determining the rate of taxation authorized by Section 11 of Article 10 of the Constitution. [State ex rel. Allen v. K. C., St. J. & C. B. R. Co., 116 Mo. 15, 22 S. W. 611; see also Thornburgh v. School District No. 3, 175 Mo. 12, 75 S. W. 81.] This was because merchant's goods (under that system) "Never go on the assessor's books at all" and "neither the assessor nor the board of equalization ever act upon it in any manner." [116 Mo. l. c. 22.] Under that system the only way to judicially determine, whether or not the valuation (given in the merchant's statement) was correct, or to

collect upon an increased valuation, was for the collector to bring suit on the merchant's bond for false statement under what is now Section 11317, R. S. 1939.

This system was changed in 1895. [Laws 1895, p. 223.] The new system, then adopted, provided that merchant's statements should be furnished to the assessor, or, in counties under township organization (which was the case here), should be delivered to the county clerk. (In June.) It required the assessor, or the county clerk who performed his duties in counties under township organization, to enter these statements, the amounts shown therein and other information, in a book, and to return this book to the County Board of Equalization. (In September.) It provided for equalization by the Board in the same manner and with the same powers as in the equalization of real and personal property. It also provided that "after the board shall have raised the valuation of any statement, it shall give notice of the fact to the person or firm whose statement shall have been raised in amount, by personal notice through the mail, specifying the amount of such raise, and that the said board will meet on the fourth Monday in September to hear reasons, if any may be given, why such increase should not be made." It further provided that when the board "completed the equalization of such statements" its valuations should be shown on the book and proper taxes extended therein, by the county clerk, "at the same rate as assessed for the time on real estate." The county clerk is required to deliver a copy of this book to the collector in October. An amendment in 1897 (Laws 1897, p. 170) added the words: "The sum of the valuation of the statements as equalized by the county board of equalization shall be included in and made a part of the total valuation of property taxable for all purposes." (As to the effect of these changes on computation of taxable property for bond issues and tax rates, see Jarman v. School District of Unionville, 264 Mo. 646, 175 S. W. 893.) This system is the one now in effect and since the revision of 1909 "Merchant's Licenses," instead of being a separate chapter under that title, has been a part of the chapter on "Taxation and Revenue" under an article entitled "Taxation of Merchants."

It seems clear, as defendant contends, that under this present system, the County Board of Equalization acts judicially; that its findings as to valuations become a part of a final judgment of assessment which it is authorized to make (subject to approval by the State Board of Equalization) ; and that, if permitted to stand, such findings are *res judicata* so that they cannot be collaterally attacked. [State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S. W. 815; State ex rel. Arnold v. McCune (Mo.), 252 S. W. 657; State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 27 S. W. (2d) 1, and cases therein cited (27 S. W. (2d) l. c. 4) ; State ex rel. City of St. Louis v. Caulfield, 333 Mo. 270, 62 S. W. (2d) 818.] A final judgment

of assessment may be reviewed by the State Tax Commission, subject to the approval of the State Board of Equalization which "completes the assessment judgment." [Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 19 S. W. (2d) 746.] The final assessment judgment may also be reviewed by certiorari on the record proper before the Board. [State ex rel. City of St. Louis v. Caulfield, supra.] It may also be directly attacked by action in equity. [Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732; Brinkherhoff-Faris Trust & Savings Co. v. Hill, 328 Mo. 836, 42 S. W. (2d) 23.] However, all of the above authorities show that when it is not attacked it has the same finality and effect as any other judgment.

There is no allegation in plaintiff's petition that the Board of Equalization raised the valuation given by defendant of "the greatest amount of goods, wares and merchandise held and owned by it, or consigned to it for sale, between the first Monday in March, 1923, and the first Monday in June of 1923;" or that it raised any valuations thus given for any of the other years included in this suit. On the contrary, it was alleged "that said statement was accepted and relied upon by the County Clerk of Livingston County, Missouri, as true and was by him extended upon the merchants' assessment book and certified as correct." This, of course, necessarily was "after the County Board of Equalization shall have completed the equalization of such statements." Plaintiff also alleged that he "first learned or had knowledge that said statement (of 1923 and each subsequent year) was false or fraudulent, on or about, the 29th day of May, 1939." (The month before this suit was filed.) There is likewise no allegation that defendant failed to pay the taxes for 1923, or for any of the other years, which were alleged to have been based on the valuations in defendant's statements; and it is alleged, in each count, that "said bond filed by defendant as above alleged, in compliance with the provisions of the statute, has been destroyed." Thus what plaintiff seeks is a reassessment of defendant's goods fifteen years after the original assessment judgment became final.

Under the original· system, prior to 1895, when the assessor and Board of Equalization had no function in taxation of merchants, it was necessarily the duty of the collector to make some investigation of the valuations shown in merchants' statements, because there was no one else who could do it. If he found substantial evidence and reasonable grounds for forfeiture of bond for a false statement it was his duty "to institute suit without delay," for "four times the amount of revenue found to be due for the year and costs." [Sections 6906-6907, R. S. 1889; Secs. 11317-11318, R. S. 1939.] He could not, however, raise the valuation given by the merchant, if it was not a false statement, even if it was out of proportion with others because of an honest difference of opinion about values. Now these merchants' statements are furnished to the assessor and returned by him (ab-

stracted in a merchants' assessment book) to the Board of Equalization, which has the same powers and is directed to proceed in the same manner as in equalization of real and personal property. This includes the power to raise valuations, and if a raise is made notice and hearing thereon is required. [Section 11309, R. S. 1939.] This contemplates an assessment judgment on merchant's assessments as on assessments of other property, final "after the County Board of Equalization shall have completed the equalization of such statements," which would be the basis for taxes for each year. Our conclusion is that by this change it was intended to substitute, for the necessarily casual and often sporadic investigation by the collector (without ▮▮▮ adequate powers to make a complete investigation) to determine correctness of valuations in merchant's statements, regular timely annual investigation and determination by the same body which had that duty as to the other property real and personal in the county subject to the same taxes; which body already had adequate powers for making such investigations, and was also given power to raise the valuation of any merchant's goods even when his list was not false but only out of proportion to the values used for assessment of other merchants' goods.

▮▮ However, we cannot agree with defendant's contention that Section 11317, R. S. 1939 (Sec. 10089, Mo. Stat. Ann. 8069), providing for forfeiture and quadruple damages for false statement, was repealed by necessary implication by the Act of 1895, providing our present system of assessment and equalization of merchant's stocks by the Board of Equalization. We see no inconsistency with the new system and no reason why it cannot be construed to harmonize with it. All four of the sections (11315-16-17-18), authorizing penalties and suit therefor, have been left unchanged ever since the amendment of 1895, although other sections of this article have been since amended. Each covers an entirely different situation, and each could still have a proper function under the new system and materially assist in the enforcement of its provisions. If the Board of Equalization finds that valuations are incorrect and raises them, and there appears to be substantial evidence and reasonable grounds that they were intentionally and fraudulently made falsely, we see no inconsistency with the present system which should prevent the collector from proceeding "to institute suit without delay" on the merchant's bond for quadruple taxes under Section 11317, R. S. 1939. (Of course, every raise in valuation by the Board does not authorize such a forfeiture for false statement.) It necessarily follows that, if the Board of Equalization approves the valuations in any merchants' statements by adopting them and making them a part of its final assessment judgment, then, when such assessment judgment becomes final, it is binding as to such valuations, and as to the amount of taxes due for that year, on both the merchant taxpayer and the collector. (There are, of course,

criminal laws providing punishment other than forfeitures and tax penalties for violation of tax laws.) Therefore, we must hold, since the assessment judgments herein became final (for each of the years involved) and were never attacked in any timely proceeding, that there was no basis shown for forfeiture of bonds herein involved for false statement and defendant's demurrer was properly sustained. Since this ruling is decisive of this case, it is unnecessary to discuss other questions raised.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.

ON MOTION FOR REHEARING.

HYDE, C.—The collector contends that the action of the Board of Equalization, in annually determining assessments, should not be held *res judicata* so as to prevent suit on forfeiture of a merchant's bond at any time thereafter when the collector can find evidence of false statements.

It is argued that this is true because the collector is not a party to the proceedings before the Board of Equalization. However, the collector merely represents and acts for the State in collecting taxes (he has no personal right but could only be interested in a representative capacity) and the State is a party to the proceedings before the Board. In fact, the State is acting through the Board to determine the assessments upon which it (and its authorized taxing units) may levy taxes. There are ample provisions for looking after the State's interests in these proceedings leading up to the final assessment judgment.

On behalf of the collector, it is further argued, as follows: "The action of the Board of Equalization in passing upon the Merchant Statements of Respondent for the years mentioned in each count of the petitions *did become a final judgment* and, therefore, Res Judicata, *on the question of the amount of the statements for taxation purposes and the amount of the tax* respondent could be re-required to pay on these statements, but it did not become a judgment of Res Judicata on the question as to whether these statements were false and defendant's bonds thereby became forfeited. . . .

"The *question of falsity of the statements* and consequent forfeiture of the bonds was not and *could not have been an issue before the Board of Equalization* in its proceedings under the provisions of the statute. The statute grants it no such authority, and, being a creature of the statute, it has only such power as is granted it by the statute." (Our italics.)

Section 11309, R. S. 1939, provides that the Board, when meeting

to consider Merchants' Statements, "shall have the same powers and shall proceed in the same manner as provided in article 3, of chapter 74, Revised Statutes 1939, for equalization of real and personal property." It is clear from the provisions of Art. 3 that these powers include the power to determine the "true value" of all property, to "raise the valuation" of either lands or goods "returned below their real value" and "to assess and equalize the value of any property that may have been omitted." [Secs. 11002, 11003 and 11006.] [See State ex rel. Davis v. Walden, 332 Mo. 680, 60 S. W. (2d) 24, concerning powers and duties of the Board of Equalization and other provisions for reaching correct assessments through action of State Tax Commission, etc.] Thus it seems clear that the question of the falsity of the statements was an issue before the Board of Equalization because the determination of the true value of the property (and whether it was all included) and its assessment at its real value was the purpose of the proceedings before it. Therefore, the actual ("real" or "true") value of a merchant's goods is a fact litigated between the State and the merchant before the Board and its finding of such value in accordance with the merchant's statement makes the matter of its correctness Res Judicata. [See In Re McMenamy's Guardianship, 307 Mo. 98, 270 S. W. 662.] The time and place to investigate and decide such issue of actual value is during the required proceedings before the Board. If the Board finds that the merchant's statement is not correct, the collector is authorized (if there is evidence to sustain the charge of false statement) to bring a forfeiture suit on the merchant's bond for quadruple damages. We hold, however, that when the assessment judgment is in accordance with the merchant's statement, and he pays the tax levied, liability on his bond ceases.

The motion for rehearing is overruled. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.