KANSAS CITY SOUTHERN RAILWAY COMPANY et al., Appellants,

v.

Robert GARVEY, et al., and Center School District No. 58, et al., Respondents.

No. 60330.

Supreme Court of Missouri, En Banc.

Dec. 6, 1979.

Rehearing Denied Jan. 15, 1980.

W. H. Bates, F. Michael Seltzer, Fernando J. Gaitan, Jr., Don C. Bollard, III, James M. Beck, Judith P. Rea, Gerald T. McNeive, Jr., Jon R. Sims, Kansas City, for appellants.

William C. Paxton, Rufus Burrus, Independence, Donald C. Earnshaw, Lee's Summit, Joe M. Williams, Associate County Counselor, Hollis H. Hanover, Kansas City, for respondents.

ROBERT R. WELBORN, Special Judge.

Joint appeal by 15 plaintiffs in suits, consolidated in circuit court, to recover school taxes paid under protest, in Jackson County for the 1974 tax year. Trial court sustained defendants' motions for summary judgment.

The issue presented is whether or not, for purposes of Section 137.073, RSMo 1969, which requires a roll-back in tax levies whenever the assessed valuation of real or personal property within a county increases by 10% or more over the previous year's valuation, the merchants and manufacturers inventory assessed valuation is included in arriving at the personal property assessed valuation.

The appellants' claims were based upon an assessed valuation of personal property in Jackson County for the year 1974 of $323,796,209, an increase of 10.13% over the assessed valuation of $294,005,408 for such property for the year 1973. The respondent

taxing authorities and school districts defense was that M & M assessed valuations are to be included in determining personal property assessed valuation; that the 1974 valuation for such purpose was $190,660,832 and $182,970,767 for 1973, producing a total personal property assessed valuation for 1974 of $514,457,041 and $476,976,175 for 1973, an increase of 7.85%.

There is no need to detail the claims of the various appellants. It is sufficient to say that, if their position as to the meaning of Section 137.073 is correct, they are entitled to a refund of a portion of the school taxes which they paid, there being no deficiencies in the procedures by which they paid such tax under protest and there being no claim that the school districts adjusted their levies for the 1974 tax year.

Section 137.073 provides:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

As appellants postulate the problem: "The issue, therefore, is of the correct definition of personal property as used in § 137.073."

Section 4(a), Article X, Constitution of Missouri, provides:

"All taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property. The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned. Nothing in this section shall prevent the taxing of franchises, privileges or incomes, or the levying of excise or motor vehicle license taxes, or any other taxes of the same or different types."

Section 137.010, RSMo 1978, provides, in part:

"(3) 'Tangible personal property' includes every tangible thing being the subject of ownership or part ownership whether animate or inanimate, other than money, and not forming part or parcel of real property as herein defined, but does not include household goods, furniture, wearing apparel and articles of personal use and adornment, as defined by the state tax commission, owned and used by a person in his home or dwelling place."

The general provisions for assessment and taxation of personal property are found in Chapter 137. In accordance with the above-quoted constitutional classification, the statutes generally refer to "tangible

personal property." Thus, January 1 is fixed as the annual assessment date for "tangible personal property." § 137.080. The assessor is required to call at the office, place of business or residence of persons "owning or holding" tangible personal property (§ 137.075) and to obtain a statement of "all taxable tangible personal property owned by the person or under his care, charge or management, taxable in the county, except merchandise upon which he is required to pay a license tax." Such property is to be assessed at 33⅓% of its true value in money. § 137.115. The assessor is required to list the tangible personal property so assessed by him in the personal assessment book. § 137.225. The assessor's book is returned to the county governing body which prepares an abstract of the assessment book, setting forth the aggregate amounts of the different kinds of tangible personal property and the valuation thereof, and forwards the abstract to the state tax commission. § 137.245. The state tax commission is authorized to equalize the valuation of each class of tangible personal property among the respective counties of the state. § 138.390. The commission then returns to the county a report showing the value of the real and tangible personal property of the county as equalized by the commission. § 138.400. After the county board of equalization considers appeals, the county clerk extends the taxes on the valuation shown in the assessor's book at the rates certified by the county court, school districts and other taxing subdivisions. § 137.290.

The M & M inventory assessment is subject to a separate procedure. Merchants are required to pay "an ad valorem tax equal to that which is levied upon real estate, on the highest amount of all goods, wares and merchandise" in their possession between the first Monday in January and the first Monday in April in each year. § 150.040. The manufacturers' tax is measured by the "greatest amount of raw material and finished products, as well as all the tools, machinery and appliances used * * between the first Monday in January and the first Monday in April * * *."

§ 150.320. The assessor lists the valuation so returned to him in the Merchants and Manufacturers Tax Book. §§ 150.050, 150.-320. The assessor delivers the book to the county clerk and the valuations are subject to equalization by the county board of equalization. §§ 150.050, 150.320. With respect to each of the taxes: "[T]he sum of the valuation of the statements as equalized by the county board of equalization shall be included in and made part of the total valuation of property taxable for all purposes." § 150.060 2., § 150.330 3. The clerk thereafter extends the tax "at the same rate as assessed for the time on real estate, * * ." §§ 150.070, 150.340. There is no provision for inter county equalization of M & M valuations by the state tax commission. Statutes require reports to the state tax commission of total M & M valuations in cities of 100,000 or more. §§ 150.080, 150.-360. The commission receives reports from all counties of M & M valuations which are included in the commission's annual report, with a notation: "Merchants and Manufacturers not assessed by the State Tax Commission." There are licensing features connected with M & M taxation. §§ 150.100, 150.310. A bond is an added requirement in the case of merchants in some instances. § 150.160.

Appellants argue that "personal property" as used in § 137.073 applies only to tangible personal property assessed under Chapter 137.

The legislative objective in the enactment of § 137.073 has been stated as follows:

" * * * [T]he purpose of the section is obviously to prevent 'windfalls' in school taxes to school districts merely because the assessed valuation of the real [or personal] property in a county increases. The legislature recognized (in the emergency clause of § 137.073, which made the Act effective upon passage) that such an increase could result in hardship for the taxpayers." *Mo. Pacific Railroad Company v. Kuehle*, 482 S.W.2d 505, 509[3–6] (Mo.1972).

In delineating the "windfall" which it intended to avoid, the legislature determined that an increase in valuation of 10% or more should require a reduction of proposed tax levies. The legislature did not require that the total assessed valuation of a county increase by that amount, only that such increase occur with respect to either "real or personal property."

In *Missouri Pacific Railroad Company v. Jones,* 544 S.W.2d 541 (Mo.1976), this court concluded that the property referred to in Section 137.073 is the locally assessed property which forms the basis for determination by taxing agencies, such as school districts, of the tax rates which will be required to produce the revenue required for operation in the ensuing year. The court noted: " * * * Section 137.073 is not directed to the state assessed utility property." By the same token, intangible personal property, the tax on which was being collected at the time of the enactment of Section 137.073, would not have been considered for purpose of application of that section because the intangible tax was not based upon a valuation of such property but was based upon the return therefrom.

■ Therefore, it must be concluded that the term "personal property" as used in Section 137.073 means tangible personal property subject to ad valorem taxation based upon local assessment. Although the legislature did not use the word "tangible" with respect to personal property, the phrase, in its context, could not have included intangible personal property.

Tangible personal property is one of the three constitutional classes of property. Section 4(a), Article X. It has been legislatively defined. § 137.010(3). The general assembly may create sub-classifications of tangible personal property, but necessarily a sub-classification would remain a part of the class.

Although appellants suggest that machinery subject to M & M assessment (§ 150.-310) "may be fixtures," there is no proof in the record that such is the case. In fact, Section 137.010(2) specifically includes "fixtures" as real property. Therefore, items subject to assessment as M & M are personal property.

■ M & M property is, as above described, locally assessed. M & M is included as a part of the valuation upon which the original tax levies are based.

If the construction urged by appellants should be adopted, an increase in M & M valuation could not be considered in determining whether or not the personal property assessed valuation had increased more than 10%. This would mean that a sizable increase in M & M valuation could produce the windfall which Section 137.073 is intended to avoid. In Jackson County, for example, in 1974, M & M valuation was approximately ⅔ of the valuation of other personal property. Had the increase in valuation been limited to M & M, and have resulted in a total valuation which would have produced 10% or more revenue than estimated needs for the schools, taxpayers would have been, under appellants' theory, entitled to no relief.

Based upon the foregoing, the General Assembly must be presumed to have employed the term "personal property" in Section 137.073 in the sense of the constitutional classification of "tangible personal property." Such construction would best fulfill the object of the statute and effectuate its purpose. In this case, the school district will receive the benefit of an increase of 7.85% of the valuation of the personal property in Jackson County. That is within the limits set by the General Assembly.

Nothing appears in the legislative history of Section 137.073 which requires acceptance of appellants' construction. It is a matter of common knowledge, reflected in the emergency clause in the enacting bill (Laws of Mo.1955, p. 835, § 2), that the legislation was precipitated by threatened action on the part of the tax commission to order increased assessed valuation of real estate in many counties of the state. However, equally obvious from the language of Section 137.073 is that the increase need not have been ordered by that agency but may arise "by other action." See *Missouri Pacif-*

ic Railroad Company v. Campbell, 502 S.W.2d 354, 357–358[1]–[5] (Mo.1973). Therefore, the fact that M & M valuation is not subject to equalization by the tax commission is not significant.

Appellants appear to rely upon the inclusion of Section 137.073 in Chapter 137 as evidence that it was intended to be limited to the assessment of property under that chapter. However, its location in Chapter 137 is the result of the action of the revisor of statutes. The original enactment was not as an addition to any existing statutory arrangement. Laws of Mo.1955, p. 835.

Appellants dwell at length upon the historically separate treatment accorded M & M property for purpose of taxation. Given this fact, the property involved remains basically personal property and it is subject to taxation according to its value. A history of the M & M system appears in State v. F. W. Woolworth Co., 348 Mo. 1180, 159 S.W.2d 297, 298–299 (Mo.1941):

"The statutes requiring bond for merchant's license tax, prescribing form of bond, and providing double, treble and quadruple penalties, as well as provisions for suit to collect them, first appear in R.S.1855, Chap. 110, pp. 1072–78. See also Laws 1853, p. 111. They have been retained to this time in almost identical language (R.S.1855, Chap. 110, sec. 4, now 11306, R.S.1939; sec. 5, now 11308, R.S. 1939; sec. 11, now 11315, R.S.1939; sec. 12, now 11316, R.S.1939; sec. 13, now 11317, R.S.1939; sec. 14, now 11318, R.S. 1939; sec. 15, now sec. 11319, R.S.1939.) Under the 1855 laws, the merchant's tax (ad valorem) was 'upon all goods, wares and merchandise, purchased by them,' with certain exceptions (sec. 3), 'within the year' (sec. 6); while the tax is now 'on the highest amount of all goods, wares and merchandise which they may have in their possession or under their control * * * between the first Monday in March and the first Monday in June.' Section 11305, R.S.1939, sec. 13067, R.S. 1919, same as now.

"However, from 1855 (sec. 6, chap. 110, R.S.1855) up to 1895 (sec. 6899, R.S.1889),

the statement showing such amounts of goods, upon which the tax was computed, was filed with the county clerk, and valuation therein stated was the only basis for computing the license tax. The clerk was later given the duty of making a 'merchant's tax book' showing the amount of each statement and the taxes due thereon, and delivering the book to the collector for collection of these taxes. Laws 1877, p. 294. Under this original license tax system, it was held that merchant's goods were not part of the assessed taxable property of a county and could not be considered in determining the rate of taxation authorized by Section 11 of Article 10 of the Constitution. State ex rel. Allen v. Kansas City, St. J. & C. B. R. Co., 116 Mo. 15, 22 S.W. 611; see, also, Thornburgh v. School District No. 3, 175 Mo. 12, 75 S.W. 81. This was because merchant's goods (under that system) 'never go on the assessor's books at all' and 'neither the assessor nor the board of equalization ever act upon it in any manner.' 116 Mo. loc.cit. 22, 22 S.W. loc.cit. 613. Under that system the only way to judicially determine, whether or not the valuation (given in the merchant's statement) was correct, or to collect upon an increased valuation, was for the collector to bring suit on the merchant's bond for false statement under what is now Section 11317, R.S.1939.

"This system was changed in 1895. Laws 1895, p. 223. The new system, then adopted, provided that merchant's statements should be furnished to the assessor, or, in counties under township organization (which was the case here), should be delivered to the county clerk (in June). It required the assessor, or the county clerk who performed his duties in counties under township organization, to enter these statements, the amounts shown therein and other information, in a book, and to return this book to the County Board of Equalization (in September). It provided for equalization by the Board in the same manner and with the same powers as in the equalization of real and personal property. It also provided that

'after the board shall have raised the valuation of any statement, it shall give notice of the fact to the person or firm whose statement shall have been raised in amount, by personal notice through the mail, specifying the amount of such raise, and that the said board will meet on the fourth Monday in September to hear reasons, if any may be given, why such increase should not be made.' It further provided that when the board 'completed the equalization of such statements' its valuations should be shown on the book and proper taxes extended therein, by the county clerk, 'at the same rate as assessed for the time on real estate.' The county clerk is required to deliver a copy of this book to the collector in October. An amendment in 1897, Laws 1897, p. 170, added the words: 'The sum of the valuation of the statements as equalized by the county board of equalization shall be included in and made a part of the total valuation of property taxable for all purposes.' As to the effect of these changes on computation of taxable property for bond issues and tax rates, see *Jarman v. School District of Unionville*, 264 Mo. 646, 175 S.W. 893. This system is the one now in effect and since the revision of 1909 'Merchant's Licenses,' instead of being a separate chapter under that title, has been a part of the chapter on 'Taxation and Revenue' under an article entitled 'Taxation of Merchants.' "

This history shows that, although the M & M tax may at one time have been sui generis, it has now been integrated into the entire scheme of taxation. Incidentally, appellants have cited *State ex rel. Allen.* As the above quotation demonstrates, that case no longer represents the law of this state.

Appellants place reliance upon the fact that Tax Commission Form 11 which the counties return annually to the state commission and which forms the basis for intercounty equalization by that body contains no listing of M & M property. However, absent equalization authority by the commission over M & M there is no reason to submit the information on the report to be used for that purpose. There is nothing in the language of Section 137.073 which limits the term "personal property" to that reported on Form 11.

Appellants point out that for M & M property, the tax thereon is levied "at the same rate as assessed for the time on real estate * * *." §§ 150.070, 150.340. Whatever might have been the situation at the time of the enactment of those provisions, the tax imposed by the school districts in this case is at the same rate for real estate and personal property.

Appellants point to the first sentence of Section 92.040, RSMo 1969, reading:

"For the purpose of state, county, and municipal taxes, merchandise held by merchants and the raw material, merchandise, finished products, tools, machinery and appliances used or kept on hand by manufacturers shall constitute a class separate and distinct by itself."

This provision has a long history, having first appeared in Laws of Mo.1879, p. 141. Thus, it was originally enacted at a time when, as pointed out in *Woolworth*, M & M was indeed considered a separate and distinct tax. However, appellants here concede that M & M is "indeed a type of tangible personal property" thus avoiding the constitutional problem which would otherwise be presented. For the reasons previously stated, Section 92.040 is not considered significant in the determination of the meaning to be accorded the term "personal property" as used in Section 137.073.

The conclusion that the trial court properly awarded summary judgment against the appellants and in favor of the respondents eliminates the need to determine whether or not, had the statute been construed according to appellants' position, they would have been entitled to summary judgment on their motions.

Judgment affirmed.

BARDGETT, C. J., SEILER, WELLIVER, HIGGINS, JJ., and STOCKARD and RUDDY, Special Judges, concur.

DONNELLY, RENDLEN and MORGAN, JJ., not sitting.