STATE OF MISSOURI EX REL. LINDELL TOWER APARTMENTS, INC. v. EUGENE GUISE, Assessor, et al., Appellants.—No. 40265.—206 S. W. (2d) 320.

Division Two, December 8, 1947.

George L. Stemmler, City Counselor, and Charles J. Dolan, Associate City Counselor, for appellants.

Oscar E. Buder and Eugene H. Buder for respondent.

[321] LEEDY, P. J.—Appeal by the members of the Board of Equalization of the City of St. Louis from the judgment of the Circuit Court of that city in a certiorari proceeding against them, which judgment voided their action increasing the assessed valuation (as of January 1, 1946) of the improvements upon relator's real property for state, city and school taxes. The respondent on this appeal was relator in the circuit court, and appellants here were respondents there. For convenience, they will be referred to as they were styled in the trial court. Jurisdiction is in this court because the case involves the construction of the revenue laws of the state. Art. V, Sec. 3, Const. of Mo., 1945.

The improvements in question consist of a 14-story modern apartment building of brick construction, containing 350 rooms with accommodations for 92 families and a garage accommodating 37 cars, located at 3743 Lindell Boulevard, and acquired by relator August 6, 1942. On January 1, 1946, it had a gross annual rental of $83,000.00, and was encumbered by a first mortgage for $477,100. The valuation of these improvements was increased by the respondents, for the purpose of taxation, from $300,000 to $350,000. The merits of that valuation are not here involved.

On June 7, 1946, the Board of Equalization made the following entry in its minutes concerning the property in question: "Improvements from $300,000 to $350,000." And on June 8, 1946, it sent the following letter by registered mail, addressed to Lindell Tower Apartment Company at 3745 Lindell Boulevard:

"The Board of Equalization of the City of St. Louis, for the year 1946, in session convened and having had brought before it plat covering City Block 3925, after thorough investigation and consideration, have increased the assessed valuation of the property located in said City Block and being a bounded parcel fronting on Lindell Boulevard, and listed in the name Lindell Tower Apartment Company, from $300,000.00 to $350,000.00, on the improvements thereof.

"You are hereby notified that if you wish to take exception to this matter you may appear before the Board, which meets daily in Room 120, City Hall, between the hours of 10:00 A. M. to 12:00 Noon and from 2:00 P. M. to 4:00 P. M., on week days/and from 10:00 A. M. to 12:00 Noon, on Saturdays.

"After the Board of Equalization adjourns, which will be on Saturday, June 15, no appeals for correction or change may be made on the taxes for the year 1946.

Very truly yours,<br>Board of Equalization,<br>Secretary.''

The registered mail receipt shows that said letter was delivered to the addressee's agent on June 10, 1946.

On June 15, 1946, relator filed in respondents' office the following document:

"June 15, 1946.

"Before the Board of Equalization of the City of St. Louis.

"Exception is taken to the notice directed to the Lindell Tower Apartments, Inc., dated June 8, 1946, as also to the action of the Board of Equalization therein referred to, because the same is not in accordance with the law made and provided increasing assessments as prescribed by the Sixty-third General Assembly of the State of Missouri, commonly referred to as House Bill No. 604, and hence the Board of Equalization was without jurisdiction and power to increase the assessment as set forth in its notice of June 8, 1946, and because further the registered address with the Secretary of State of the State of Missouri of the undersigned company is the 'C. T. Corporation System, 314 North Broadway, St. Louis, Missouri,' which is not only the last known, but the only address of the Lindell Tower Apartments, Inc.; that neither said Assessor nor his [322] deputies at any time took any action increasing the assessment of exceptor prior to May 1, 1946, but that said Board of Equalization without granting a hearing prior thereto, attempted of its own accord, without a complaint or appeal of any kind filed or had before it and without notice whatsoever to increase the assessment; and this exceptor further without prejudice to its exception to the jurisdiction aforesaid, states that the assessment said Board of Equalization attempted to place upon the improvements aforesaid of the exceptor herein is unreasonable, erroneous and not the fair and reasonable market value thereof, as prescribed by law as per attached appeal.

(Signed) Lindell Tower Apartments, Inc.,<br>(Signed) By O. E. Buder, Its Atty.''

On the same day relator filed another document (apparently on the Board's printed form) captioned "Appeal against the assessment of property in the name of Lindell Tower Apartments, Inc.," and

consisting of a description of the property, and a questionnaire, partially answered and verified.

On the same day, according to the minutes, O. E. Buder "appeared and presented the appeal." The record entry is as follows:

"Saturday, June 15th, 1946.

"Pursuant to adjournment, the Board convened with all members present. The minutes of the preceding session were read and approved:

"The following proceedings were had:—Number of Appeal—170. Name of Owner—Lindell Tower Apartments, Inc. City Block—3925 Lot ... Street on which Lot Fronts—Lindell. Feet front—88′ 5½″. Feet Deep—153′ ¾

142′ ¾

Assessment per Foot or per Acre—$320.00

Assessment of Improvements—$350,000.00

Total Real Assessment—$378,320.00   Personal Assessments—Action by the Board.

"O. E. Buder appeared and presented the appeal. Upon action duly seconded and unanimously passed it was ordered that said appeal be denied, property to remain as assessed."

Subsequently relator brought this certiorari proceeding by which it successfully challenged the increase ordered by respondents. The questions presented on this appeal are: (1) Whether the assessor's public notice (of the fact that the assessment books were open for inspection, and stating the when and where the board would be in session) is jurisdictional; and (2) whether the increase was made without notice to relator, and without according it a prior hearing. The trial court answered both of these questions in the affirmative, and, accordingly, held the action of the board to be null and void, and restored the assessment to the figure returned by the assessor. We take the last question first. Both involve a construction of certain sections of H. B. 604 enacted by the 63rd General Assembly with an emergency clause, approved December 31, 1945 [Laws 1945, p. 1859; Secs. 11000.101-11000.123 Mo. R. S. A.], and to which all references herein made to statutes apply, unless otherwise indicated.

Section 10 of that Act imposes upon the board the power and duty "to adjust, correct, and equalize the valuations and assessments of any taxable real . . . property within the city." In the same connection, it declares the duties of the board touching taxable real or tangible personal property "omitted from the assessment plat books or records *then under examination by them*," and directs it to "adjust and correct the assessment plat books or records accordingly." Then follows this proviso, "that if said board *proposes to increase any assessment* or to assess any such omitted property, it shall give notice of the fact to the person owning or controlling the property affected,

his agent or representative, by personal notice, by mail," etc. It then provides that the notice as to omitted property shall "state the kind and class of property and the value fixed thereon by said board and shall name the time and place, not less than five days thereafter, when and where such person may appear before the board and show cause, if any, why said assessment should not be made." It is then provided, "*A like notice* shall be given if the board proposes to increase any assessment, *and in addition thereto shall state the* [323] *amount of such increase.* For· cause shown, if any, that the assessment was erroneously or improperly made, the board may change, alter or cancel the assessment."

The language of the personal notice served on relator by mail, if taken literally, would mean that an actual increase had theretofore been made by the board. This interpretation is buttressed somewhat by the recital of the final minutes denying the "appeal," and directing that the property "remain *as assessed.*" These inaccuracies of expression appearing in the notice and minutes (if they are such) are but part of a larger pattern of informality and laxity with which these proceedings, and the launching of operations under the new act, appear to have been marked. Both sides were perhaps about equally chargeable with some of the irregularities. For example, one of the documents filed by relator was captioned "*Appeal* against assessment"; whereas, appeals to the Board of Equalization contemplated by Secs. 12, 13 of the 1945 Act are from assessments made by the assessor. Hearings before such board on its own proposals to increase assessments are not "appeals" within the meaning of that statute. As we have seen, the other document filed by relator "excepted" to the personal notice, sought to raise the question of the jurisdiction of the board, and alleged (without prejudice to its exception to the board's jurisdiction) "that the assessment said Board of Equalization attempted to place upon the improvements . . . is unreasonable, erroneous and not the fair and reasonable market value thereof, as prescribed by law *as per attached appeal.*" Another irregularity appearing on the face of the notice is the designation of the hours during which the board would be in session. Section 12 imposes the duty upon the board of remaining "in continuous session for at least three hours in the forenoon and at least three hours in the afternoon of each day, except Sunday.". This does not mean two-hour morning and afternoon sessions Monday through Friday, with no afternoon sessions on Saturdays, as stated in the notice.

Disregarding the ineptness of the language of the notice, minutes, and other documents, and looking through form to substance, we think it clear that the action of June 7 did not constitute, either in fact or in law, a present increase in the assessment of relator's property. What was signified (when considered in the light of the whole record) was that the board proposed to increase the assessment to the

amount stated, as authorized by Sec. 10. It was tentative in nature, and subject to be changed upon a future hearing, if such were desired, whereat relator was notified it might appear, if it wished "to take exception to this matter." It did "except," appeared, was heard, its "appeal" denied, and the property determined to "remain as assessed" (obviously meaning the figure specified in the notice), all as appears by the minutes of June 15. "This court has uniformly ruled that a party may confer jurisdiction over his person by voluntarily appearing without the service of any writ, or where the notice was short of that required by law or was defectively served; and where the sole purpose of the statute, as in this case, is to give an additional notice to the person whose assessments have been increased by the board of equalization, it is obvious he may waive the notice, and appear and contest the proposed increase, and when he does he will not afterwards be heard to complain of the insufficiency of the notice." State ex rel. McLeod Lumber Co. v. Baker et al., 170 Mo. 194, 70 S. W. 470, 472. There was no attempt, therefore, to increase the assessment without notification to relator, nor failure to grant it a hearing on the proposed increase. In finding to the contrary, the trial court fell into error.

So much for what relator expressly concedes to be its main reliance. We pause here to say that, except for the fact this appeal is one affected with a public interest, we would unhesitatingly dismiss it because of the failure to comply with rule 1.04 (d) of this court, providing that the transcript on appeal "*shall* contain a complete index," etc. This requirement has been wholly ignored. The duties of the court are laborious enough without the [324] added confusion, annoyance and inconvenience created by such a glaring omission.

The other question is in relation to the assessor's general notice by newspaper advertisement, the publication of which failed to comply with the requirements of Sec. 11. This point might well be disposed of by what was said above concerning waiver through appearing and contesting the proposed increase, but for future guidance, and in view of the trial court's holding that the statutory requirement of two weeks' notice by publication in at least two daily newspapers is jurisdictional, and that such requirement was not satisfied by the notice given in this case, thus rendering the board's action null and void, more extended consideration of the point is, perhaps, justified. The notice in question fixed the time and place of the meeting of the board as May 20, 1946, in the assessor's office, and stated that the board would remain in session four weeks, and no longer. The notice was published as follows: In the St. Louis Globe-Democrat on May 6, 9, 12, 15 and 18, 1946; in the St. Louis Post-Dispatch on May 7, 10, 13, 16 and 19, 1946; in the St. Louis Star-Times on May 8, 11, 14 and 17, 1946. The respondents do not undertake to justify this mode of publication as being in compli-

ance with the requirements of Sec. 11, but take the position that the provisions of that section should be construed as being directory rather than mandatory.

The statute invests the board with power to propose increases, and requires it to meet for that purpose on certain designated days. It carefully provides for what it denominates as "personal notice" to the taxpayer, not only of the board's proposals to increase, but also (in cases of real property) where the assessor himself "proposes to increase any assessment" [7]. These safeguards sufficiently satisfy the requirements of due process under any view that may be taken of the matter, so that with these provisions for personal notice extant, the reason for a general public notice would seem somewhat obscure, at least as applied to real estate assessments. A further, though nonetheless persuasive, consideration pointing to the provisions of Sec. 11 as being directory in nature is that, under Sec. 8, the assessor has until "on or before the 1st Monday in May" to complete the assessment books or records, and Sec. 12 fixes "the 3rd Monday in May" as the date for convening the Board of Equalization. Section 11 does not require publication of the notice therein contemplated until "the assessment plat books or records are *completed*." So that, if the assessor takes the full time permitted by Sec. 8 (that is, until the end of the fourteenth day before the first session of the board), it would be impossible to give two weeks' notice before the first session of the board. We hold, therefore, that the provisions of Sec. 11 are directory, and not mandatory.

It follows that the judgment should be, and it is reversed, and the cause ordered remanded with directions to enter judgment for respondents (appellants here) quashing the writ. All concur.