**Mae E. HUMPHREY, Appellant,**

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE,**
**Respondent.**

**No. 7493.**

Springfield Court of Appeals.
Missouri.

Jan. 31, 1956.

Arno L. Ponder, Poplar Bluff, for appellant.

Elmore G. Crowe, H. Burks Davis, Jefferson City, for respondent.

RUARK, Judge.

This is an appeal by Mae E. Humphrey from the judgment of the circuit court affirming the decision of the Director of the Department of Public Health and Welfare, who in turn had upheld the action of the Ripley County welfare office in rejecting appellant's application for old age assistance.

The principal question was who actually owned the sum of $1,000 (formerly) in the possession of petitioner and by her delivered to her daughter, one Jane Kenser. Some background is necessary to make the facts apparent.

James Humphrey (now 79 or 80 years old, disabled, arthritic and somewhat hard of hearing) and Mae Humphrey (now 66 years old and under treatment for high blood pressure and arthritis) had raised to

maturity eight children, three his and four hers by former marriages and one by their own union. They lived frugally in "the backwoods," removed from the distracting luxuries of mail route, telephone, electricity and automobile. Mrs. Humphrey attended to most of the "managing," buying, spending, etc. Evidence showed them to be of good reputation. They did not trust banks, having lost a small deposit in a bank failure years ago. Two of the sons previously (one while in the army) had accomplished savings by forwarding sums to the mother (appellant here), who safely kept them until called for by the owner sons. In 1948 James Humphrey, the husband, applied for and was granted old age assistance. In the statement of combined assets signed by the husband and wife at such time he listed ownership of 200 acres. An interest held by Mrs. Humphrey was not mentioned. She had inherited from her father a one-eighth share in an 80-acre tract which eventually, by trade and purchase, (but whether before or after the 1948 application is not shown) she built into an ownership of one 40-acre tract. In September 1954 she sold this 40 for a net of $375.45 and most of the proceeds she said went to the preparation for and purchase of a full mouth of teeth ($213) and for feed and some wood cutting. She said at trial date she had about $25 of this (40-acre) money left.

In April of 1954 one Mr. Braschler, county welfare director, went to the home of James and Mae Humphrey to check on whether James should be continued on the old age assistance rolls, because, as Braschler expressed it, their showing of combined assets in the original application was near the limit. When he arrived at the home James Humphrey was alone. Braschler made some inquiry of him and the old man produced his billfold and they counted his money, which amounted to $47. Braschler waited until Mrs. Humphrey came home and asked her how much money *she* had. She replied that she had about $35. Both Mr. and Mrs. Humphrey stated that Braschler demanded to look into her purse. He denied "demanding" but said he told her

that he would "have to know how much money she had in her purse before we would know whether he continued to be eligible." Mr. Humphrey told his wife, "Let him see your purse. He is going to take away the pension if you don't." Mrs. Humphrey went into the bedroom (apparently her purse was in there) and closed the door behind her, and Braschler "stepped to the door and told her I would like to see her in there." He went into the room and Mrs. Humphrey produced from her purse money totaling $370. While in this room Braschler "happened to glance" at the bed and saw the edge of a roll of bills sticking out from the edge of the covers. He asked Mrs. Humphrey about this and she produced it and stated it contained $1,000 which belonged to her daughter, Jane Kenser. He did not count it, but it appeared to be made up mostly of twenty-dollar bills, with a hundred-dollar bill or two. He asked for the daughter's address so that he might inquire of her concerning it. Mrs. Humphrey gave him the name of the town but said she could not give the street address. Two days later the daughter, Jane Kenser, appeared and $1,000 was deposited in the bank in an account maintained by her and her husband.

The explanation of Mrs. Humphrey and her daughter, Jane Kenser, is that Jane had saved the money prior to her marriage (which marriage was some seven years previously); that she worked at various jobs, including that of cotton picking, garment factory work in Poplar Bluff, and in St. Louis; that she lived frugally and as her savings accumulated from time to time she gave the money to her mother for safekeeping. Neither Mr. Humphrey, the appellant's husband and Jane's stepfather, nor Mr. Kenser, Jane's husband, knew of this secret bank roll, although the Kensers, husband and wife, had a bank account. Jane's story was that her husband was a welder; that they traveled from place to place and lived in a trailer; that she was saving the money in order to buy furniture when they moved into their own home. Appellant's story as to why she hid the $1,000 and why she told Braschler that she had only about

$35 of her own instead of $370 is that she didn't want her daughter's savings to become known and that she was nervous and afraid; that the reason she didn't give Braschler her daughter's address was that she "didn't want it sent over there about that money I had for her. I told him I would bring her up."

Subsequent to this April incident James Humphrey was removed from the old age assistance rolls. The following October, shortly after attaining the age of 65 years, appellant applied for the benefits, was rejected and this appeal follows.

■ The petitioner for old age assistance has the burden of proving his or her eligibility for such benefits. Johnson v. State Department of Public Health and Welfare, Mo.App., 283 S.W.2d 147. The actual ownership of the $1,000 was a question of fact, and it is not the prerogative of this court to hear the case de novo and pass on the weight of the evidence. Such function has been left to the Director of Public Health and Welfare, and if there is substantial evidence to support his finding of fact we must permit it to stand. Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817. The decision on the fact in this case necessarily involves the determination of the credibility of the appellant and her daughter Jane, and the determination of the credibility of witnesses is within the province of the Director. Norman v. State Department of Public Health and Welfare, Mo.App., 283 S.W.2d 143, 146. By this we do not mean to say that the Director may blindly, or by whim, choose arbitrarily to shut his eyes to any and all evidence, and without reason decide to believe or disbelieve as a matter of caprice—for to say such would furnish an effective means to completely destroy the remedy of appeal given by the statute. But if the facts and circumstances furnish any basis for the exercise of sane mental function which can reasonably result in disbelief in respect to credibility; or if the facts and circumstances are such that reasonable men might differ as to the conclusion to be drawn therefrom, then the decision of the Director is final. Davis v. State Department of Public Health and Welfare, Mo.App., 274 S.W.2d 615.

■ The fact that the daughter Jane claims to have saved the money from earnings accumulated prior to her marriage over seven years previously, during which she and her husband had a bank account; the fact neither husband knew of these alleged savings; the fact that appellant told the county director that she had only $35 when her pocketbook actually contained $370 in money admittedly hers; the fact that the petitioner attempted to conceal the $1,000— these things raise questions, which are more than mere suspicion, over which reasonable men might differ; and they in themselves constitute "substantial evidence" upon which the finding of the Director might well be based. Therefore we cannot say that such finding was arbitrary and unreasonable. It is our opinion that the judgment of the circuit court must be affirmed, and it is so ordered.

McDOWELL, P. J., concurs.

STONE, Judge (concurring in result).

I heartily concur in the result reached in the principal opinion, which, as my erudite colleague properly points out, "necessarily involves the determination of the credibility of the appellant and her daughter Jane," a matter "within the province of the Director." But, to his subsequent comments reflecting an ingenious design to challenge and undermine the basic principle that "any * * * fact finding administrative agency, passes upon the credibility of the witnesses and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony offered in support of the claim", so stated by our Supreme Court, en banc, in Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149, 151(3), recognized in a long line of recent cases cited in Norman v. State Department of Public Health and Welfare, Mo.App., 283 S.W.2d 143, 146(4,

5), and again approved by our Supreme Court, en banc, in Ellis v. State Department of Public Health and Welfare, Mo., 285 S.W.2d 634, I record this respectful, but nonetheless emphatic, protest.