The MAY DEPARTMENT STORES COM-ANY, a Corporation, Respondent,

v.

STATE TAX COMMISSION of Missouri, James M. Robertson, John A. Williams, J. Ralph Hutchison, Commissioners of the Missouri State Tax Commission; Phil G. Deuser, Assessor, St. Louis County, Missouri; Willis G. Benson, Collector, St. Louis County, Missouri; J. D. Massey, Collector, City of Clayton, Missouri, Defendants, School District of Clayton, Intervenor, Appellants.

No. 45943.

Supreme Court of Missouri, Division No. 2.

Jan. 13, 1958.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for appellant State Tax Commission.

William Kline, St. Louis County Counselor, Clayton, John F. Molloy, Asst. County Counselor, for appellants Phil G. Deuser, Assessor, Willis W. Benson, Collector, St. Louis County.

F. William Human, Jr., City Atty. Clayton, for J. D. Massey, Collector of City of Clayton.

Ziercher, Tzinberg, Human & Michenfelder, by Erwin Tzinberg, Clayton, and George E. Schaaf, for School Dist. of Clayton.

Lewis, Rice, Tucker, Allen & Chubb, John Torrey Berger, J. L. Pierson, Stanford T. Meyer, St. Louis, for respondent.

EAGER, Judge.

This is an appeal from a judgment of the Circuit Court of St. Louis County, which, on review, set aside a decision of the State Tax Commission. Other com-

ponent parts of the judgment will be referred to later. The case involves the assessment of a tract of land and improvements in Clayton, St. Louis County, which comprise the Famous-Barr store. We shall refer to the owner, May Department Stores Company, as the plaintiff, since it prosecuted the review proceedings. The defendants are the members of the State Tax Commission, the Assessor and Collector of St. Louis County and the Collector of the City of Clayton. The School District of Clayton was permitted to intervene, and it has joined with all the defendants in this appeal. Motions for new trial were filed and overruled and the appeals were duly taken.

The State Tax Commission heard the matter on appeal from the St. Louis County Board of Equalization, under authority of § 138.060 (all statutory references are, unless otherwise indicated, to RSMo 1949 and V.A.M.S.); it heard certain oral evidence, which is included in our transcript, and it received, upon agreement of the parties, the oral evidence and exhibits offered and received in three appeals by other parties heard on the same day (September 12, 1955). We shall therefore consider as our record all this evidence, together with the other proceedings certified here by the Commission. The tract in question is described as follows: "Survey 378 278/270 x 222/280 South on Forsyth, West on Jackson East University City, North Maryland 1.65 Acres. 106-CII School District and Code." The improvements consist of a four-story reinforced concrete building, constructed in 1947–8. As of January 1, 1955, this real estate was assessed at: land, $16,830; improvements, $1,011,700. In 1954, the State Tax Commission determined, wholly or partly from a study of a "Real Estate Ratio Study," which was based on certain reported sales in 1953 and on 1954 real estate assessments, that an equalization of valuations as between counties was necessary; such is authorized and required by § 138.390. This ratio study showed that in St. Louis County, based on 581 reported 1953 sales, "Urban Property"

was assessed (on the average) at 18.26% of actual value; it further showed, on the basis of 28 reported 1953 sales, that "Rural Property" was similarly assessed at 15.38%; the study further showed that urban and rural real estate in certain other counties was assessed at even smaller percentages, but the majority at greater percentages; in all but four of the 115 counties and the City of St. Louis, rural real estate was assessed at higher percentages. The record also shows in detail the aggregate assessed valuations reported by St. Louis County for 1954 and 1955, and the relative aggregate valuations (classed as "town lots" and "farm lands") as fixed in 1953 and 1954 for each county by the local assessors and by the State Tax Commission. We shall hereafter refer to the State Tax Commission as the Commission. In June, 1954, the Commission determined that it would equalize in that year certain of the lowest counties, and on July 8, it issued percentage increases accordingly to 14 counties; it stated in its record that it was expected to take "at least two or three years to complete the equalization," but that the intent was to accomplish such at the earliest possible date. On July 6, 1955, the Commission ordered percentage increases on real estate in 26 additional counties, including St. Louis County; in that connection it found: " * * * that the following percentages of increase and decrease when applied to the valuations of the real and tangible personal property, by classes, of the respective counties will produce a valuation representing the true value of such property in money; * * * " The increases so ordered for St. Louis County were 85% on "land," and 60% on "town lots," which increased the aggregate St. Louis County land valuation to $769,-891,919. This increase was in the form of an order that such percentages of increase be applied to the aggregate valuations in the respective counties. When the Commission's order of increase was received, the St. Louis County Board of Equalization (which we shall refer to as the County Board), on July 19, 1955, ordered the coun-

ty clerk to adjust the valuations of real estate accordingly, and the record shows that the new aggregate figures were entered on his "aggregate abstract," Form 11. Presumably the 60% increase was never specifically applied on the books to the *land value* of the tract in question, for reasons later shown.

In April, 1955, a special committee of the St. Louis County Council had recommended strongly against any blanket increase in real estate valuations and had specifically recommended a comprehensive revaluation by recognized appraisers, to begin immediately. The committee had met with the State Tax Commission and had been informed of the latter's intentions; at this meeting the Commission had also stated, as shown in the report, that members of its staff had visited each of the 26 counties in which 1955 increases would be made, verifying the sales and assessment figures, and that it did not have the financial means or the personnel to accomplish a state-wide equalization within a one-year period and had therefore proposed a three-year program. This committee report is in the present record without objection; it emphasized that a blanket increase would further aggravate already existing inequalities in assessments, particularly in view of the rapid and "unplanned" growth in St. Louis County.

It further appears that the County Board had made some investigation of land values in the City of Clayton, with assistance from the city or from individuals in Clayton (whether official or unofficial we cannot tell) and that it determined to reassess the land values (only) in its "commercially zoned" area in an effort to fix such assessments at 30% of actual value. This was said to be appropriate because that land had increased in value to a "far greater" extent than the land in any other commercial area. The Board did not attempt any general revaluation for 1955 in any other area or areas because of the lack of time, facilities and money to do so, although it realized that a comprehensive re-

assessment of all county real estate was the only completely fair and equitable method, and it had approved the report of the St. Louis County Council Committee. Thus, on July 21, 1955, the County Board entered an order specifically increasing the assessed land valuations of several hundred tracts in the "commercially zoned area of Clayton," which included an increase in the land value of the tract here in question from $16,830 to $148,500; it was further ordered: "* * * that the assessments increased in this order shall not be included in the overall increase of County assessments made in the Order of the County Board of Equalization dated Tuesday, July 19th, 1955." Hearings were set for July 29, 1955, and publication was ordered. It seems to be agreed that this order was published in two county newspapers but that no notice was mailed to or served upon plaintiff. The 60% increase was applied to plaintiff's (and other) improvements, for the final assessment on the tract was: land, $148,500; improvements, $1,-602,720. The net result of the specific Clayton increases was said to be an aggregate increase in the valuations of these tracts from $1,739,430 to $6,914,680, or a net increase of $5,175,250. We note from an exhibit that the total aggregate increase in all "town lots" was $4,726,516; it is apparent that the valuations on some property of this class elsewhere must have been reduced. The exact amounts are not material here; the increase (from either standpoint) was in the approximate amount of five million dollars. The new total aggregate of the values of "land" and "town lots," after this increase, exceeded the total aggregate ordered by the Commission by the sum of $7,837,071. A substantial part of the total excess reflected new property added to the rolls.

We are unable to determine whether plaintiff actually appeared before the County Board on this increase; its appeal recites that it did. In any event it duly took an appeal to the Commission pursuant to § 138.430, and a hearing was had on Sep-

tember 12, 1955. The evidence showed, among other things (omitting facts already related), that: the county sends out annually approximately 240,000 real estate tax bills; that there are 95 different municipalities in the county; that there are disparities in valuations, and the chief deputy assessor "imagined" that some tracts were assessed at less than 10–12% of market value; that, in the opinion of the County Board, the commercially zoned property in Clayton had increased in value far more than that in other localities; that if all land in the county had been revalued there would probably have been an aggregate increase; that in the Clayton commercial zone the attempt was to assess at 30% of actual value. One Clayton property owner, testifying both as owner and as an expert, said that his tracts were assessed at substantially above 30% of their actual value, that there were other recently developed areas, that in his opinion Clayton had been discriminated against, and that "If they would follow the State's order they wouldn't be far off base." (We cannot tell whether this witness meant land values only, or land and improvements, but the record generally indicates that he probably meant land only.) The comptroller of the plaintiff testified that the cost of its improvements was $3,210,000, and that this cost, depreciated, was $2,412,000 as of January 31 1955. The basis of depreciation was not stated, and no evidence was offered to show the value of the land. This witness also testified that the value of the building was substantially lessened because the whole district had become congested, there was inadequate parking space, and the location, for such a store, had become more or less obsolete. In this testimony he was generally corroborated by a real estate expert. The net result of plaintiff's own evidence was that the true value of its improvements was $2,412,000.

The Commission, on December 2, 1955, fixed the value of the land at $104,490 and of the improvements at $1,249,640, being a total of $1,354,130, and duly notified plaintiff. It thus reduced the figures of the County Board substantially on both items. Aside from formal matters the Commission found that it had issued its blanket increase order, that the improvements cost $3,210,-000 and that the valuations for taxes in 1955 were as stated, supra. As a conclusion of law it held that the evidence adduced by the petitioner did not show that the assessed valuations, as then corrected, were "unlawful, unfair, arbitrary, improper, or capricious"; it also declared as conclusions of law various well-recognized principles of taxation.

It will not be necessary to digest the petition for review, for its allegations will be substantially covered in discussing the points raised here. It was specifically denominated "Petition for Judicial Review of the State Tax Commission's Decision Affecting Assessment of Plaintiff's Property." Although appeals had been taken by this plaintiff on several other tracts and all the hearings had been consolidated, only the tract which we have previously described was mentioned in the present petition for review. We may say here that the plaintiff therein attacked as unconstitutional the Commission's blanket order of July 6, 1955, and the orders of the County Board, and alleged that the decision of the Commission was not supported by competent and substantial evidence on the whole record, and that it was arbitrary, capricious, unreasonable, illegal and void. Plaintiff prayed for declarations of the invalidity of the various orders, and that the original assessment of January 1, 1955, be restored by directions to the Commission, along with alternative prayers for other, and less full, relief. Answers were filed which sufficiently made up the issues to be considered here.

On motion and order plaintiff was permitted to pay to the County Collector and to the Collector of the City of Clayton the amounts due as taxes under the original assessment, and also to deposit with the clerk of the Circuit Court checks for the balance of the taxes based on the final order and decision of the Commission. At the

same time the court ordered that collection of the additional taxes be enjoined. The order permitted the respective collectors to accept without prejudice the checks based on the original assessments, and further ordered that "plaintiff shall incur no interest or penalties * * *."

Trial was had on April 23, 1956; it consisted largely of colloquy between court and counsel and the introduction of the transcripts, exhibits and records. In so far as necessary, certain of these offers will be referred to later. On July 21, 1956, the court filed its memorandum and judgment, in which, after reciting the facts and proceedings very fully, it held and adjudged: that the order of the State Tax Commission of July 6, 1955, purporting to increase the assessments on land and town lots in St. Louis County, was void; that the order of the County Board complying with the Commission order, and its later order purporting to increase the assessed value of certain described land in the "commercially zoned" area of Clayton, were void; the order and decision of the Commission on December 2, 1955, fixing the final valuations on the tract in question was set aside, and the Commission was ordered to take steps to reinstate plaintiff's original assessment of January 1, 1955. The court stated: that the order of the Commission in equalizing some counties in a given year and leaving others then unequalized was discriminatory and violative of the principle of uniformity of taxation, as well as of "equal protection" (§ 3, Art. 10, Mo.Const., 14 Amendment U.S. Const.), and that the order of the County Board singling out "commercial property in the City of Clayton" for revaluation, while not acting upon other commercial property, was likewise in violation of the same constitutional provisions; the court stated no specific grounds for the invalidity of the final decision of the Commission except as incorporated in its findings and conclusions regarding the previous orders.

In discussing the contentions made here, it will simplify matters to consider first those of the plaintiff, the original complaining party. It submits: (1) that the blanket order of the Commission and the order of the County Board in compliance therewith are discriminatory and unconstitutional as violative of the principles of uniformity and equal protection; (2) that the order of the County Board specifically increasing valuations in the commercially zoned area of Clayton was void and discriminatory (and violative of the same principles) because it arbitrarily placed those tracts in a special class and assessed them at a different percentage of value than other property in the county, because it fixed thereon values in excess of the valuation fixed by the Commission, and because that property was assessed at a "higher percent of true values" than was other property in the county. Certain other contentions will be mentioned and discussed later. The defendant-appellants insist principally: (1) that the validity of the July 6, 1955, order of the Commission is not open to question in this proceeding; (2) that if it is, it is valid as an effort, performed with the facilities and means at hand, to attain uniformity; (3) that the orders and valuations of the County Board and of the Commission carry a presumption of validity and of right action, that there is no evidence to establish discrimination or the contention that plaintiff's property was assessed at a "higher percent of true value" than other property in the county, and that the County Board was likewise making a bona fide effort to achieve uniformity in increasing valuations in Clayton. Defendants (as we shall designate them) also make certain more or less incidental points which will be discussed.

■ This court undoubtedly has jurisdiction, since the case involves construction of the revenue laws (§ 3, Art. 5, Mo.Const.; State ex rel. Lindell Tower Apartments v. Guise, 357 Mo. 50, 206 S.W.2d 320), and also a monetary difference of more than $7,500 in taxes assessed on the different valuations, to wit, $19,013.46; we need not discuss other grounds of jurisdiction.

**756**

■■ The first question which confronts us is whether the validity of the order of the Commission increasing valuations in St. Louis County, on July 6, 1955, may properly be considered in this action. We have determined that it may not. Equalization between counties was a duty expressly imposed upon the Commission by the mandate of § 138.390. That order of the Commission did not constitute a "contested case" within the meaning of § 536.100 providing for judicial review of administrative decisions in such matters; § 536.010 defines a "contested case" as a "proceeding * * in which legal rights, duties or privileges of specific parties are required by statute to be determined after hearing." In matters thus reviewable under Chapter 536, notice to the parties affected is expressly provided for (§ 536.090), and the petition for review must be filed within 30 days after the mailing or delivery of notice. It would be wholly impracticable for the Commission to give notice of a blanket increase to all owners of real estate in 26 counties, or even in St. Louis County. The order here affected counties and classes of taxpayers, and not "specific parties"; and it was not a subject of contest, within the usual understanding of that term. We hold that the equalization order of July 6, 1955, was not a decision of which a review is contemplated under § 536.100. By § 536.105, added to the Chapter in 1953, it is provided that decisions of administrative officers or bodies which determine the legal rights, duties or privileges of any person, and which are not subject to administrative review, and for which there is no other provision for judicial inquiry or review, may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action. This section clearly comprehends only decisions involving individual rights and interests; this is indicated by the use of such terms as "any person," the "revocation of a license," and "such person"; Section 536.110 requires the filing of proceedings within 30 days after the mailing or delivery of notice of the administrative decision. As previously stated, no individual notice could possibly be contemplated in connection with county equalization orders of the Commission. Section 536.105, as such, is not applicable to the order of July 6, 1955.

By § 138.430 the Commission is required to consider appeals from findings, orders, decisions and assessments of the director or collector of revenue, and appeals by property owners from local boards of equalization. We find no statutory provision for an appeal from orders of the Commission such as the order of July 6, 1955, and plaintiff does not purport to have taken or attempted any appeal from that order.

■ Certain of the facts are significant in this connection. Initially, the County Board ordered the 60% increase applied to property in the County, generally; however, within two or three days it increased the land valuation on plaintiff's tract, along with sundry other land in Clayton, in such a manner that the land valuation was far in excess of the figure to be accomplished by a 60% increase; its final improvements valuation was the original figure increased by 60%. An appeal was prosecuted, and in the decision under review, the Commission reduced the County Board's land valuation from $148,500 to $104,490, and the valuation on improvements from $1,602,720 to $1,249,640; it will thus be seen immediately that the Commission itself did not (in this specific case) follow its 60% order of increase, for it valued the land at a considerably higher rate of increase, but left the improvements (and the total) as a value very substantially less than that attained by a 60% increase. This the Commission could do, because its 60% order of increase operated only upon the aggregate county valuations, with certain leeway permitted for specific intra-county equalizations; and this was an appeal from a County Board valuation, where only intra-county valuations are considered. The 60% order of increase, as such, was not carried through into the specific decision now under review, and one can hardly say that

it was and is an integral part of the last and final valuation, either as to land or improvements; rather, the valuations were the result of a specific consideration of this particular property. Under such circumstances it would not seem that, even on the facts, the July 6, 1955, order of the Commission is open for review or in issue here.

■ While perhaps it is not controlling, we note that the Commission acts in a judicial capacity (State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S.W. 815, 817; Bank of Carthage v. Thomas, 330 Mo. 19, 48 S.W.2d 930, 934; State ex rel. Young v. F. W. Woolworth Co., 348 Mo. 1180, 159 S.W.2d 297, 299) and that its acts, not directly attacked, have the finality and effect of any other judgment (Woolworth, supra, 159 S.W.2d loc. cit. 299). There is no statutory provision for an appeal from its orders and judgments; however, as indicated later, we do not say that they are immune from all attack or review. It is very doubtful, to say the least, whether the Commission itself could have set aside its order of July 6, 1955, at the time of the hearing in the present matter; that order had long since been transmitted to the counties, and it then had the effect of a judgment.

■ Certain orders of the Commission (or, more specifically, its predecessor in the field of equalization—the former State Board of Equalization) have been considered and reviewed by the courts in direct proceedings in certiorari. State ex rel. Gardner v. Hall, 282 Mo. 425, 221 S.W. 708; State ex rel. Plummer v. Gardner, 290 Mo. 143, 234 S.W. 53; State ex rel. City of St. Louis v. Caulfield, 333 Mo. 270, 62 S.W.2d 818; Hannibal & St. Joseph R. Co. v. State Board of Equalization, 64 Mo. 294; State ex rel. St. Louis County v. Evans, 346 Mo. 209, 139 S.W.2d 967; State ex rel. Young v. F. W. Woolworth Co., 348 Mo. 1180, 159 S.W.2d 297, 299. And see the excellent discussion by the Honorable Rush H. Limbaugh in 6 Mo.Law Review 432. As indicated in those authorities, the issuance of the writ and the scope of the review is somewhat limited, being confined to the record proper, and the remedy is discretionary with the court; and it has been stated that the discretion of the court should be "warily exercised when, as here, it is brought by a single taxpayer, and its effect, if granted, will be to nullify the valuation for the purpose of taxation of the real property of the city of St. Louis." State ex rel. Gardner v. Hall, 282 Mo. 425, 221 S.W. 708, loc. cit. 712. In certain cases suits in equity have been permitted (generally against the collecting officials) where the action of the Commission or Board of Equalization constitutes a legal fraud, an excess of jurisdiction, is so grossly excessive as to be inconsistent with an honest exercise of judgment, or where the order is void on its face, and when the contestant has exhausted available administrative remedies. Bank of Carthage v. Thomas, 330 Mo. 19, 48 S.W.2d 930; Columbia Terminals Co. v. Koeln, 319 Mo. 445, 3 S.W.2d 1021, 1024; Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 298 S.W. 732, 55 A.L.R. 489; First Trust Co. of St. Joseph v. Wells, 324 Mo. 306, 23 S.W.2d 108, 111; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 19 S.W.2d 746; State ex rel. Merritt v. Gardner, 347 Mo. 569, 148 S.W.2d 780; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S.W. 778. And see 17 St. Louis Law Review 264. Mandamus has occasionally been employed, but usually to enforce the orders of the Commission or State Board. State ex rel. Thompson v. Dirckx, 321 Mo. 345, 11 S.W.2d 38; Huidekoper v. Hadley, 8 Cir., 177 F. 1, 40 L.R.A.,N.S., 505, certiorari denied 223 U. S. 735, 32 S.Ct. 529, 56 L.Ed. 635 (to require Board to follow statutory method of equalization); State ex rel. Thompson v. Bethards, 320 Mo. 1164, 9 S.W.2d 603. Neither the judgments of the Commission nor those of the County Boards may be attacked collaterally. State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S.W. 815; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S. W. 778.

Plaintiff's counsel, while insisting that the scope of the review proceedings under Chapter 536 is broad enough to encompass all the relief sought, suggests also that we may consider this as a suit in equity directly attacking the various orders. We have already decided the first point, in so far as the Commission's order is concerned, and have considered both § 536.100 and § 536.105. It is true that plaintiff asks sundry relief, including declarations that the orders of the Commission and of the County Board are void, that the original assessment be reinstated, and that the court determine (in the alternative) the proper assessment. However, the whole body and context of the petition, as well as its title, show that it is in fact a petition for *review* of the specific decision of the Commission on this particular property, rendered on December 2, 1955. *That* decision was one rendered in a contested case and it is subject to review, but we hold that the scope of this review is not sufficient to reach the validity of the order of July 6, 1955, for the various reasons already given. Counsel argue the effect of § 536.140, stating the manner and extent of review; that section in no way extends the effect of § 536.100 which provides the very right of review and confers the jurisdiction. Desirable as may be simplicity in all appellate procedure and review, we cannot consider this as an independent suit directly attacking the Commission's previous order, without doing violence to the record and the undisputed facts. Furthermore, this review is strictly an appeal from the County Board, which certainly could not have set aside or held the Commission order to be invalid; and it is at least to be doubted whether the Commission, sitting as an appellate body in this proceeding, could have done so itself. The proceedings authorized by § 536.100 were never intended to operate as a new and independent suit, and the review here sought was of a specific contested order (of December 2, 1955) within the purview of that section. Under these circumstances we do not rule on the vigorous attacks made upon the order of the Commission of

July 6, 1955, but this is in nowise to be taken as a concession of its invalidity.

■ We now consider the contention that the orders of the County Board were unconstitutional and void. Before doing so, however, we shall rule on two or three more or less incidental contentions. At the Circuit Court hearing plaintiff obtained permission of the court, without objection of counsel, to add the testimony of the witness August Rumping, Deputy County Assessor, to the list of those whose testimony was received by the Commission by agreement (from the transcript of the three other appeals heard on the same day). Counsel for defendants now insist that this was improper, even by agreement, because no new evidence may be heard or added in the Circuit Court on review, and that the Commission was only asked at its hearing to incorporate the testimony of the other witnesses appearing in that transcript. Counsel cite State ex rel. Horn v. Randall, Mo.App., 275 S.W.2d 758. The principle is sound as applied to new or additional evidence, but the testimony of Mr. Rumping was actually heard by the Commission and was incorporated into the transcript of the other three appeals. It is obvious that his name was omitted by mistake, and the Circuit Court did not thus consider anything which the Commission had not heard. The contention is disallowed. Plaintiff also offered in the Circuit Court as Exh. 25 a zoning map of Clayton. This was no part of the record before the Commission and it should not have been received. As will be indicated later, however, we think it immaterial.

■ When the County Board made its order of July 21, 1955, specifically increasing the land values on various tracts in Clayton, the order was published in two county newspapers, but no service was had on plaintiff in person or by mail, as provided for in § 138.100; the statute evidently contemplates publication as to those whose addresses are unknown. The general requirement of notice is recognized (Columbia Terminals Co. v. Koeln, 319

Mo. 445, 3 S.W.2d 1021), but, of course, an appearance before the County Board to oppose the increase would constitute a waiver of notice. State ex rel. McCune v. Carter, 279 Mo. 304, 214 S.W. 180; State ex rel. McLeod Lumber Co. v. Baker, 170 Mo. 194, 70 S.W. 470; State ex rel. Lindell Tower Apartments v. Guise, 357 Mo. 50, 206 S.W.2d 320. The evidence does not show whether plaintiff appeared before the County Board, but its original verified petition for appeal to the Commission recites that it did, as does the record of the Commission. But, regardless of waiver by appearance, plaintiff took its appeal, and was given a full and complete hearing on the merits by the Commission; it was only thereafter that its assessment became final. Under these circumstances, we do not consider the lack of personal notice to be so material as to deprive plaintiff of due process, or otherwise to invalidate the proceedings. Cooley on Taxation, 4th Ed., Vol. 3, §§ 1113-1120, incl.; Kennen v. Mc-Farling, 350 Mo. 180, 165 S.W.2d 681, 682-683.

■ Plaintiff attacks the orders of the County Board as constituting a violation of the requirement of uniformity in the taxation of a class of property (Art. 10, § 3, Mo.Const.) and of the equal protection provisions of the Fourteenth Amendment, U.S.Const. More specifically, counsel say that the order increasing the land values of various designated tracts in the commercial area of Clayton "singled out" that property and assessed it at a different and higher percentage of value than other property in the county. We have reviewed the evidence generally, but we note again here that Mr. Boedecker, a member of the County Board, testified that, in the opinion of the Board, that land had increased in value to a "far greater" extent than the land in any other commercial area in the county; and, in substance, that it was more equitable to increase the land values there immediately, pending a general and contemplated revaluation of all property in the county; that two years previously the

Board had reassessed the commercial area of Jennings, because it had increased considerably in value; that the effort in Clayton was to bring the land assessments to 30% of actual value. At that time the County Council was making plans for a comprehensive reassessment, which would probably take two or three years, but the Board had no facilities, or time, to make such an appraisal.

■ A County Board of Equalization has the full power and duty to effect intra-county equalization. § 138.050, § 138.100. It shall raise the valuation of all tracts as have, in its opinion, "been returned below their real value." The State Tax Commission has nothing to do with intra-county equalization. § 138.390; First Trust Co. of St. Joseph v. Wells, 324 Mo. 306, 23 S.W.2d 108. Certain recognized principles in the law of taxation may well be noted. Assessments and the valuations of real estate for taxation are never subject to exact ascertainment, and they are, at best, matters of opinion and estimate on the part of the taxing officials. Ulman v. Evans, Mo., 247 S.W.2d 693, 697; State ex rel. Thompson v. Bethards, 320 Mo. 1164, 9 S.W.2d 603. Sec. 138.050 expressly recognizes that the County Board of Equalization exercises its "opinion." There is a presumption of validity and of good faith in the actions of taxing officials, and of the correctness of assessments. Ulman v. Evans, Mo., 247 S.W.2d 693; State ex rel. Thompson v. Bethards, 320 Mo. 1164, 9 S.W.2d 603, 604; and such presumptions attach to the actions of the county and state boards of equalization, as well as to the valuations of assessors (Bethards case, supra).

In the case of Black v. McGonigle, 103 Mo. 192, 15 S.W. 615, it was held that the action of a county board of equalization increasing valuations in all townships except one, on differing percentages, was valid; also, that the board might have increased the valuations of individual tracts, had it chosen to do so. In part, the court said (103 Mo. loc. cit. 198, 199,

15 S.W. loc. cit. 617): "* * * Where the lands in one township have been assessed at their true value, and those in another township have been assessed at a uniform lower rate, then the assessed value of the lands in the latter may be brought up to the standard of the former, and that is what appears to have been done in the present case. In such a case it is not necessary to specify each parcel of land thus increased. It is sufficient to increase the assessed value of all the lands in the particular township by one order; and this increase may be made on a per centum basis. Says Cooley: 'In raising or reducing the assessment of a particular district, it is sufficient for the board to designate a percentage of increase or decrease.' Cooley, Taxation [2 Ed.] 422. * * *" We realize that the facts in that case differ from ours, but the principle is applicable. The case would seem to be authority for increasing valuations in any one district, if it is undervalued. The foregoing quotation was repeated with approval by this court in State ex rel. Stone v. Christian County Bank, 234 Mo. 194, 136 S.W. 335, 336. And see, generally, Ulman v. Evans, Mo., 247 S.W.2d 693, where valuations were shown to have been considered by districts or neighborhoods, with some specific reference to Clayton. The County Board is not only authorized but required, to raise the valuations of any and all tracts which it deems to be returned at "below their real value"; had the Board here selected 10, 20 or 30 specific tracts in the commercial area of Clayton for increases, its judgment could hardly be successfully attacked. The argument here seems simply to be one seeking to impeach the judgment of the Board because it found that all of that property was undervalued in relation to other county property. We hold that the "singling out" of the commercial area of Clayton did not, under these circumstances, invalidate the specific order of increase made here. Allowing to the Board a measure of discretion, it appears that it was taking a first step toward attaining uniformity in the assessments of the county, piecemeal though it may have been, and at a time when a complete revaluation was immediately impossible. Defendants cite certain cases from outside Missouri, which the plaintiff says are distinguishable, either on their facts or because of differing local laws. To a certain extent this is true, but the following are definitely applicable as refuting the contention that the order constituted a violation of the equal protection provisions of the Federal Constitution: Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154; Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183; Adkins v. Hamilton, 335 U.S. 861, 69 S.Ct. 133, 93 L.Ed. 407; Rogan v. County Commissioners, 194 Md. 299, 71 A.2d 47.

Plaintiff cites the case of T. J. Moss Tie Co. v. Allen, Mo.App., 8 S.W.2d 1038. There the county board had arbitrarily assessed all "wild land" at a valuation of $5 an acre, without any pretense of ascertaining the actual value of any tract or tracts, or of assessing it at any given percentage of actual value. The situation there is obviously distinguishable from the present case.

While perhaps not material, we note that these increases in Clayton were only upon the land values, and not on improvements; the latter, in plaintiff's instance and presumably in others, constituted the vast majority of the total assessment. On this review we must also consider the increased valuation as modified by the Commission, for it is the decision of the latter which is on review here.

Counsel next insist that by virtue of this increase plaintiff's property was arbitrarily assessed at a different and higher percentage of value than other property in the county, thus effecting a discrimination. We note here that a mere overvaluation of one or more tracts is not in itself sufficient to establish a discrimination, but that it must also be shown that other property in the same class, generally, is undervalued. Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300

S.W. 778, 784, and cases cited; Cooley on Taxation, 4th Ed., Vol. 3, § 1143. Plaintiff produced before the Commission evidence of the cost and supposed present value of its improvements, but no evidence whatever as to the *land value* of the tract here in question; nor does the record contain anything which might possibly be considered as substantial evidence of the actual values of other property generally, so as to create a basis for an average valuation of other property of the same class. As we understand, counsel argue that, assuming their own evidence of value to be true (it not being contradicted), the assessment on the improvements should be 30% of $2,412,000, or $723,600, and on the land a 60% increase (at most) on the original assessment of January 1, 1955, whereas by the Commission's present decision plaintiff's property is assessed at a higher percent (again using as conclusive their own evidence of value). The argument is based on the further assumption that the Commission increase accomplished, for other properties, an assessment of 30% of actual value, and that the assessment of all urban property in St. Louis County, prior to the 1955 increase, was at 18.26% of actual value, as shown by the ratio study in evidence. The Commission could disbelieve plaintiff's evidence of value, even without other evidence (Ellis v. State Dept. of Public Health and Welfare, Banc, 365 Mo. 614, 285 S.W.2d 634), although it may not blindly shut its eyes and act upon whim and without reason (Humphrey v. State Dept. of Public Health and Welfare, Mo.App., 286 S.W.2d 563). Counsel argue also that the finding of the Commission must be based on evidence found in the record, citing State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, and Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563. Indeed, it has been held (prior, however, to the enactment of the Administrative Review Act) that a board of equalization may act upon its own knowledge of the facts. State ex rel. McCune v. Carter, 279 Mo. 304, 214 S.W. 180; State ex rel. Harrison County Bank v. Springer, 134 Mo. 212, 35 S.W. 589. We shall consider this procedural point later.

The fallacy of the present argument is twofold: first, there is no evidence to show the actual value of plaintiff's land, or of other land values in the same class or, indeed, in the county generally, hence no basis for a comparison or a finding of discrimination; and, secondly, we are convinced that the Commission's estimate of an 18.26% assessment on urban property generally in St. Louis County may not be used, *in lieu of evidence*, in an individual case, as establishing that the average of all similar property generally was so assessed. So far as St. Louis County was concerned the study was based on the sales and assessments of 581 urban tracts and 28 rural tracts; the total number of tracts in St. Louis County was approximately 240,000. This study was made only for the purpose of equalizing aggregate values as between counties; the figure of 18.26% was obtained solely from the sales and assessment figures on 581 tracts; the Commission, as shown by its blanket order, was merely attempting to raise the aggregate in St. Louis County to "a valuation representing the true value of such property." It is pure speculation to say, from this record, that thereafter all other real estate in St. Louis County, or even the average thereof, was assessed at 30% of actual value, and that plaintiff's property was assessed at a greater percentage. In the case of Township of North Bergen, Hudson County v. Venino, 45 N.J.Super. 143, 131 A.2d 792, a somewhat similar ratio study and table of equalization was held not to constitute, in itself, evidence of individual values. In St. Louis-San Francisco Ry. Co. v. Arkansas Public Service Commission, Ark.1957, 304 S.W.2d 297, 304, the Arkansas Court refused to accept a similar ratio study as evidence of the actual average percentage of assessments to true value, referring to it as " * * * a sample check or a series of spot checks of a limited number of ad valorem property as-

sessments, * * *." In our case the 30% of true value, ostensibly sought by the Commission (in aggregate values), was apparently used by it as a minimum average figure. After the 1955 order many counties were left with estimated assessment percentages in excess of 30% of true aggregate value (15 counties on urban property—up to 48.50%, and 37 counties on rural property—up to 54.40%). This is only mentioned to show further that the ratio study and the order of the Commission can in nowise be conclusive on matters of individual valuation. We are convinced that plaintiff did not establish a discrimination in this regard; it had the burden. Cooley on Taxation, 4th Ed., Vol. 3, § 1223. If plaintiff's assessment has not been shown to be in excess of others generally (or the average) in the same class, it has not been hurt, in, a constitutional sense. Plaintiff has not claimed that its property was assessed at a figure higher than the "true value" required by § 137.-115. In the discussion of this point we might well have eliminated all reference to the value or assessment of the improvements, for the 60% order of increase was presumably applied alike to *all* improvements on urban property in St. Louis County, and we have held that the validity of that order is not open to question in this proceeding.

■ Plaintiff also suggests that this tract was improperly included in the "commercially zoned" area of Clayton; its counsel offered in the Circuit Court as Exh. 25 a zoning map of Clayton to show that the tract in question was zoned as "Light Industrial" property, though immediately adjoining "Commercial" property. New evidence could not be received in the Circuit Court on review; but even if we assumed that the fact sought to be shown were true, it would be immaterial, for the assessment on this particular property was specifically increased according to its *legal description,* and any further references may be considered as surplusage, or, at most, merely descriptive. It is perfectly obvious that the property is in the commercial area, speak-

ing in a nontechnical sense. And certainly this point was not raised before the Commission.

■ We are also urged to invalidate the order of the County Board increasing the valuations on Clayton property because its final aggregate valuation of all St. Louis County real estate was $7,837,071 in excess of the aggregate submitted to the county by the State Tax Commission, namely, $769,891,919; and cases are cited to the effect, generally, that the aggregate valuation fixed by the Commission may not be changed by the County Board. See also § 138.030, specifically prohibiting a reduction in value. Of this excess $5,175,250 supposedly represented increased land values in Clayton, though reduced to $4,726,516 by reductions on "town lots" elsewhere. We are not concerned with the balance of the increase of the aggregate, which presumably came from omitted tracts put on the rolls by the Board (§ 138.070) or from an increased valuation on "farming lands," or both.

■ Defendants say that this point was not raised in the petition for review, that it was not urged before the Commission, and that it is not properly here. We have searched the petition with the point in mind; we find no facts alleged which would raise the point, and no such theory of invalidity advanced. However, our statutes providing the remedy of judicial review (§§ 536.100, 536.110) do not require specific grounds to be stated in the petition, as does, for instance, the Public Service Commission Act in motions for rehearing (see §§ 386.500, 386.510); we find no previous authority requiring such under Chapter 536. We hesitate to impose the requirement here, although counsel did see fit to set out the other grounds in great detail. Under the circumstances we shall consider the point.

■ The only fact with which we are here specifically concerned is that the County Board did, after receiving the aggregate figures from the Commission, increase the total valuation of urban real es-

tate (as thus submitted) by something less than five million dollars, by reason of the Clayton order of increase. The actual net increase on urban property was approximately .614 of 1% of the total aggregate. Since this increase involved strictly a matter of intra-county equalization, it would seem to make no difference whether the order was made before or after receiving the Commission's figures. First Trust Company of St. Joseph v. Wells, 324 Mo. 306, 23 S.W.2d 108. Sec. 138.030 specifically provides that the county boards may not *reduce* the valuation of the Commission. Various cases have stated, under wholly different facts, that a county board may not change the aggregate figure, some saying that it may not increase or decrease it. Plaintiff thus cites: Mercantile Trust Company v. Schramm, 269 Mo. 489, 190 S. W. 886; Columbia Terminals Co. v. Koeln, 319 Mo. 445, 3 S.W.2d 1021; State ex rel. Thompson v. Dirckx, 321 Mo. 345, 11 S.W. 2d 38; Bank of Carthage v. Thomas, 330 Mo. 19, 48 S.W.2d 930; State ex rel. Thompson v. Bethards, 320 Mo. 1164, 9 S. W.2d 603. To these might be added: First Trust Company of St. Joseph v. Wells, 324 Mo. 306, 23 S.W.2d 108. All of those cases involved the power and authority of a county board to apply to a certain class of property a percentage of value different from that ordered by the State Board of Equalization in a blanket percentage increase or decrease. Certain of the cases were proceedings instituted to force compliance by the county board. Bethards and Dirckx cases. The Schramm case was a direct proceeding by certiorari to review the entire proceedings. None of those cases involved an incidental increase resulting from specific intra-county equalization or specific revaluation, after full recognition of the blanket increase imposed by the State Board. We adhere to the principle announced in those cases, to wit, that the local boards may not refuse to follow the State's order, and that, generally speaking, they may not alter the aggregate materially, certainly not by applying a different percentage of value to a class of property. The situation here is further complicated. In 1945 the legislature enacted an entirely new act relating to the State Tax Commission (Laws 1945, pp. 1805–1817), and it repealed the prior laws governing both the Commission and the State Board of Equalization. In 1947 (Laws 1947, p. 548 et seq.) it reenacted § 15 of the new act, and therein added the following (now par. 4 of § 138.400): "In any case where the final valuation fixed by a county board of equalization, as reported to the state tax commission, differs materially from the valuation fixed by the commission, such county board of equalization may be called into session by order of the state tax commission at any time between the date when such county board of equalization adjourns *sine die* and the first day of November of the same year." This would seem to give to the Commission some latitude and a certain measure of discretion with reference to increases in the aggregates; perhaps this is especially true where there has been no failure or refusal to follow a prior order as such.

Here the Commission itself has reviewed this specific assessment and made its decision; we know from the record that it has also reviewed certain other increases of valuations which were included in the order affecting Clayton; we have no way of knowing what excess did finally result from the Clayton increases after the Commission acted, nor whether the Commission ultimately considered the total to differ "materially" from its original aggregate figures (§ 138.400, supra). As a practical matter it would seem virtually impossible for a county board to perform any acts of intra-county equalization after receiving the state figures, without making some variation, even though slight, from the Commission's totals. By statute the county boards are permitted to meet to consider increases and decreases (§ 138.050, § 138.100) after the Commission transmits its report to the counties (§ 138.400). Certainly, in this case the final figures showing the County Board's valuations were before the Commission when it heard the present matter

on review of the action of the County Board, and when it heard other appeals. Neither the Commission nor any other state agency has seen fit to make a direct attack upon the orders or valuations of the County Board for the reasons now discussed. This case involves a review of an individual valuation. Under the circumstances, we decline to hold the present decision of the Commission invalid for the reasons just discussed.

 Finally, plaintiff insists: that the decision of the Commission must be set aside because it disregarded plaintiff's uncontradicted evidence of value; that, at most, the Commission should only have increased the original land assessment by 60% of $16,830; and, in substance, that the decision is unsupported by any evidence. Counsel cite cases to the effect that administrative agencies may not disregard the evidence and base their decisions upon conjecture or personal opinion. Humphrey v. State Dept. of Public Health and Welfare, Mo.App., 286 S.W.2d 563; Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563. Assuming the validity of that principle, which at times may seem to conflict with the right of an agency to disbelieve plaintiff's oral testimony and thus to decide against one having the burden of proof (Ellis v. State Dept. of Public Health and Welfare, 365 Mo. 614, 285 S.W.2d 634), there are practical reasons why plaintiff's theory and argument are not controlling here. As to the land value, plaintiff produced no evidence whatever; its appeal was taken from an assessed valuation of $148,500, fixed by increase of the County Board; plaintiff had the burden of showing (§ 138.430) to the Commission that such an amount was "unlawful, unfair, improper, arbitrary or capricious." By producing no evidence it failed to do so. It is true that the Commission might consider its prior blanket order of increase, but it also could and must consider the specific increase imposed by the County Board. The Commission did reduce that assessment, very materially, to $104,490. Consequently, even if its action was based upon no evi-

dence, plaintiff has not been hurt, for it in nowise sustained its burden upon the hearing which it had sought. Had the decision been such that the county or state authorities appealed, and there still was no evidence of land value, we might be required to reverse. We shall not do so at the instance of this plaintiff, who is not entitled to insist upon the requirement of substantial evidence where, by its own default when it had the burden, it failed to produce any evidence. As to the improvements, the figure arrived at by the Commission ($1,249,640) was substantially less than the County Board figure of $1,602,720, which was arrived at by applying the 60% increase. Since we have held that the validity of the blanket order may not be questioned here, we shall certainly not hold this action of the Commission to be arbitrary, unfair or unlawful; presumably, the 60% increase has been applied to the improvements on all urban property in St. Louis County, unless reduced, as here, upon special appeal.

 The courts may not sit in judgment on the opinions and estimates of duly constituted taxing officials and substitute their own opinions. Cooley on Taxation, 4th Ed., Vol. 3, §§ 1144, 1201. So far as excessiveness is concerned, the assessment must be "so grossly excessive as to be entirely inconsistent with an honest exercise of judgment" before the courts may intervene. Ulman v. Evans, Mo., 247 S.W.2d 693, 697; St. Louis Electric Bridge Co. v. Koeln, 315 Mo. 424, 287 S.W. 427, 429. Much is necessarily left to the discretion of the taxing authorities. 17 St. Louis Law Review, pp. 258–259.

We have discussed the substance of all matters raised in the respective "Points and Authorities" and briefed. Any other points, which may have been referred to incidentally and not so briefed and preserved, have been considered and denied. Counsel for plaintiff have suggested that, since the Circuit Court did not find it necessary to rule on the contention that its property was assessed at a "higher percent of true value" than other property in the

county, we should remand the case for decision on that point, if we disagree with the judgment otherwise. We do not find that necessary. The Circuit Court had no authority to make findings of fact in this review proceedings, and we do not understand that it did so. We have held, as a matter of law, that the valuation under review is not discriminatory or void for the reason asserted. Nor, under all the circumstances, need this case be sent back to the Commission for additional findings.

We thus hold that the decision of the Commission was not, on this record, unlawful or otherwise invalid within the meaning of § 536.140. The judgment of the Circuit Court declared void the order of the State Tax Commission of July 6, 1955, and the orders of the St. Louis County Board of Equalization of July 19 and 21, 1955; it set aside the decision of the Commission in the matter specifically upon review as rendered under date of December 2, 1955, with directions to reinstate the original assessment of January 1, 1955. The judgment is reversed in its entirety, with directions to enter a new judgment in conformity with this opinion affirming the decision and order of the State Tax Commission. It is so ordered.

All concur.